[No. S090337. Aug. 8, 2002.]

MYCOGEN CORPORATION et al., Plaintiffs and Appellants, v. MONSANTO COMPANY, Defendant and Respondent.

MYCOGEN PLANT SCIENCE, INC., Plaintiff and Appellant, v. MONSANTO COMPANY, Defendant and Respondent.

890

## COUNSEL

Hayes Simpson Greene, Foley & Lardner, Kenneth S. Klein; Brobeck, Phleger & Harrison, Daniel G. Lamb, Jr., Kristen E. Caverly, Kelly C. Wooster, Thomas M. Peterson and Brett M. Schulman for Plaintiffs and Appellants.

Geoffrey C. Hazard, Jr., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Horvitz & Levy, Ellis J. Horvitz, David M. Axelrad, Jon B. Eisenberg, Andrea M. Gauthier; Steptoe & Johnson, Lawrence P. Riff, Laurence F. Janssen, Jay E. Smith; and E. Allan Farnsworth for Defendant and Respondent.

Sedgwick, Detert, Moran & Arnold, Kevin J. Dunne, Frederick D. Baker and Kirk C. Jenkins for Lawyers for Civil Justice as Amicus Curiae on behalf of Defendant and Respondent.

Rex R. Perschbacher as Amicus Curiae on behalf of Defendant and Respondent.

Walter W. Heiser as Amicus Curiae.

**OPINION**

**MORENO, J.**—This consolidated matter arises out of three appeals from two related actions involving continuing litigation over a license agreement between Mycogen Plant Science, Inc. (MPS) and Monsanto Company (Monsanto) concerning technology to produce genetically altered plant seeds. In the initial action, MPS sought, and was granted, declaratory relief finding that Monsanto had a contractual duty to license its technology to MPS, as well as an order for specific performance requiring Monsanto to do so. MPS later unsuccessfully sought to have Monsanto held in contempt for failure to comply with that order. MPS subsequently filed a second lawsuit seeking damages for breach of the same license agreement. We granted review to decide whether the second action was barred under the doctrine of res judicata. We conclude that it was barred. Accordingly, we affirm the judgment of the Court of Appeal.

I

Monsanto develops transgenic plant seed technology, in which genes for specific desirable qualities, such as resistance to pests and herbicides, are transplanted from the seeds of one species to the seeds of another. Developing commercially marketable seeds with these qualities is a complex, lengthy, and costly process. After a new gene with the desirable characteristics is developed in the laboratory, it must be inserted into a cell; the transformed cell of plant material is called "germplasm." It then can be developed into a fertile plant, which can be cross-bred, field-tested, and, finally, seeds can be produced in commercial quantities for marketing.

In 1989, Monsanto entered a license agreement with Lubrizol Genetics, Inc. (LGI), the predecessor of MPS, providing, among other things, that LGI had an option to negotiate licenses for Monsanto's reengineered genes in corn, cotton, and canola. The agreement did not specify the licensing terms, providing only that the license shall "have terms as favorable [to LGI] as any other third party licensee." At that time, the technology for producing commercially viable crop seed from these genes was in its early stages.[1]

In 1992, Mycogen Corporation acquired control of LGI, which it renamed Mycogen Plant Science, Inc. In 1993, MPS, as the successor in interest to LGI, sought to exercise an option under the license agreement for Monsanto's gene technology. It warned that any delay in obtaining Monsanto gene

---

[1]Monsanto did not create the first commercially viable insect-resistant corn (Bt corn) until 1995-1996, bringing the seed to market in 1997. It took eight and 10 years, respectively, for Monsanto to succeed in creating herbicide-resistant canola and cotton; it has not succeeded in producing a commercially viable herbicide-resistant corn.

technology would "result in substantial damages" and urged that "[t]ime is of the essence for us." Monsanto refused to negotiate licenses, asserting that the agreement was nontransferable.

In 1993, MPS commenced an action (hereinafter *Mycogen I*) for declaratory relief and specific performance of the license agreement. Notably, MPS did not seek monetary damages. After the parties brought cross-motions for summary judgment, the superior court granted summary judgment for Monsanto; MPS appealed. In 1996, the Court of Appeal reversed the summary judgment in favor of Monsanto and remanded the matter with directions to enter summary judgment in favor of MPS. (D021481 [nonpub. opn.].) The resulting judgment declared, among other things, that MPS was entitled to the benefits of LGI's license agreement and had validly exercised the option under that agreement. The judgment further ordered Monsanto to "specifically perform the relevant terms of the Agreement" by licensing Monsanto's gene technology to MPS and by disclosing the terms of any third party license agreements. The superior court retained jurisdiction to grant MPS "any further relief" against Monsanto "as may be necessary and appropriate to actuate the Court's declaration."

Monsanto and MPS failed to agree on what technology MPS was entitled to under the terms of the license agreement. Although Monsanto provided MPS with genes in solution, MPS asserted that Monsanto was obligated to provide MPS not only with genes, but also with germplasm, which would have accelerated its efforts to produce commercially viable seeds. In 1997, Monsanto tendered draft licenses for the same genes in solution; MPS refused to negotiate and the parties did not reach agreement on licensing.

In 1997, hoping to obtain germplasm pursuant to the order for specific performance, MPS initiated contempt proceedings in *Mycogen I*. MPS alleged that the judgment required Monsanto to deliver germplasm rather than genes alone. In July of 1997, the superior court ruled that Monsanto was not in contempt of the judgment in *Mycogen I* because the judgment did not clearly and unambiguously obligate Monsanto to provide germplasm. A postjudgment order imposed sanctions against MPS pursuant to Code of Civil Procedure section 128.5,[2] ruling that the contempt action was frivolous. MPS appealed this ruling. (D032171.)[3]

In 1996, after the Court of Appeal issued its decision in *Mycogen I* but before the superior court entered the final judgment, MPS and two of its

---

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise noted.
[3] The Court of Appeal agreed that the contempt proceedings were meritless but reversed the order for sanctions. The issue is not before us.

affiliates commenced a second action in superior court against Monsanto (San Diego County Super. Ct. No. 699882; hereinafter *Mycogen II*). In *Mycogen II*, MPS sued Monsanto for breach of the same license agreement that was the subject of *Mycogen I*. The suit alleged, among other things, that Monsanto breached the licensing agreement by refusing to allow MPS to exercise its option rights. In contrast to the earlier action, MPS now sought money damages, including lost profits from its inability to compete in the market for transgenic seed as a result of Monsanto's breach. Monsanto successfully demurred to the initial complaint on a theory of res judicata.[4] MPS then filed an amended complaint, which withstood further demurrer, adding new allegations of a continuing breach of the licensing agreement.[5]

Subsequently, the contempt proceedings under *Mycogen I* and MPS's breach of contract action in *Mycogen II* were coordinated by the superior court.[6] The court first held a hearing to determine whether MPS was entitled to genes or germplasm under the 1989 license agreement. Following that hearing, the court ruled in favor of Monsanto, finding that under the terms of the license agreement, Monsanto was obliged only to license genes and improvements to genes, as opposed to licensing the germplasm desired by MPS.

Finally, in 1998, a jury trial commenced in *Mycogen II*. MPS sought damages for losses from Monsanto's breach, beginning in 1993 and including lost future profits from certain seed sales every year "to perpetuity." After the trial judge entered a directed verdict on the issue of breach of contract, the jury awarded MPS $174.9 million in damages. Monsanto appealed. (D031336.)

In appealing the verdict, Monsanto argued that the doctrine of res judicata precluded MPS from recovering damages in *Mycogen II* after obtaining specific performance in *Mycogen I*. According to Monsanto, its contract with MPS was totally breached when Monsanto refused to perform and repudiated the license agreement in 1993 after MPS first attempted to exercise its

---

[4]Monsanto's demurrer to MPS's original complaint in *Mycogen II* was proper under section 430.10, subdivision (c), since there was another action pending between the same parties on the same cause of action. MPS was granted leave to amend; the final judgment in *Mycogen I* had been entered by the time MPS filed its first amended complaint.

[5]MPS affiliates Mycogen Corporation and Agrigenetics, Inc., were the other plaintiffs in *Mycogen II*. The trial court sustained Monsanto's motion for judgment on the pleadings as to the affiliates and judgment of dismissal was entered against them. Claims in *Mycogen II* other than MPS's breach of contract claim against Monsanto, including causes of action for tortious interference with prospective business advantage, were also dismissed. Mycogen Corporation and Agrigenetics, Inc., appealed the order dismissing them from the action (D031046). The Court of Appeal affirmed on this point and they did not seek review in this court.

[6]MPS had filed a motion in superior court, pursuant to section 1048, subdivision (a), to consolidate the proceedings in *Mycogen I* and *Mycogen II*. This motion was denied.

·option, giving rise to a single cause of action. MPS therefore could not recover money damages in a second lawsuit on the identical single cause of action. In response, MPS contended that res judicata did not apply because Monsanto was under a continuing duty to tender licenses for gene technology after MPS sought to exercise its option in 1993, but repeatedly refused to do so. The Court of Appeal rejected MPS's argument, concluding that "[i]t is not a fair characterization of this record to contend that several hypothetical, successive breaches [after Monsanto repudiated the license agreement] occurred on a continuing basis. The definitive breach was in 1993, giving rise to any rights to relief at that time."

The Court of Appeal reversed the judgment of the superior court in *Mycogen II*, holding that this action was barred by the doctrine of res judicata. The court reasoned that in *Mycogen I*, MPS had elected the equitable remedy of specific performance, as opposed to the legal remedy of damages, for Monsanto's breach of contract. Although a plaintiff may also obtain an award in equity of monetary relief incidental to a decree of specific performance—for example to fully vindicate its contractual rights—MPS did not seek such relief in its first action. Instead, it brought a second action seeking the legal remedy of damages based on the same breach of contract. This it could not do; the cause of action in *Mycogen I* must be deemed merged into the judgment, and the judgment serves as a bar to any subsequent lawsuit containing the same cause of action for breach of contract, i.e., "as to those issues litigated or that could have been litigated regarding the delivery of the requested Monsanto technology." The Court of Appeal concluded: "That MPS chose initially to seek only specific performance is not a reason to excuse it from its duty to pursue all appropriate remedies at the time that would have been available for the claimed breach of contract."

We granted review; we now affirm the judgment of the Court of Appeal.

## II

■ "Res judicata" describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, "precludes relitigation of issues argued and decided in prior proceedings." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].)[7] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in

---

[7]While the term "res judicata" has been used to encompass both claim preclusion and issue preclusion, we here use the term "res judicata" only to refer to claim preclusion. As we have

a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action.

A clear and predictable res judicata doctrine promotes judicial economy. Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. " 'Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief.' " (*Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1245 [65 Cal.Rptr.2d 25].) A predictable doctrine of res judicata benefits both the parties and the courts because it "seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*." (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 280, p. 820.)

█ MPS argues that the judgment in *Mycogen I* granting declaratory relief and specific performance of the contract did not preclude, under the doctrine of res judicata, its subsequent suit for damages for breach of that same contract. MPS contends that its suit in *Mycogen II* was not barred by res judicata because the action in *Mycogen I* was brought under the declaratory judgment act (§ 1060 et seq.), which provides that "no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts." (§ 1062.) Since the relief awarded in *Mycogen I* was primarily declaratory, MPS maintains that the judgment in this first action did not preclude MPS from bringing a second action for damages. We disagree. As we explain below, the declaratory judgment act carves out an exception to the bar of res judicata only where a plaintiff's initial action seeks *purely* declaratory relief. Here, MPS sought and received both declaratory and coercive relief in *Mycogen I*. Consequently, res judicata precludes MPS from seeking additional relief based on the same cause of action.

█ A declaratory judgment action provides litigants with a quick, efficient means of resolving a disputed issue. In 1921, the California Legislature passed the declaratory judgment act (the Act). (§ 1060 et seq.) Under the Act, a party may ask the court for a declaration of rights or duties and the court may make a binding declaration of these rights. Section 1060 provides in pertinent part: "Any person interested under a . . . contract . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court . . . for a declaration of his or her rights and duties . . . , including a determination

noted, "The doctrine of collateral estoppel is one aspect of the concept of res judicata. In modern usage, however, the two terms have distinct meanings." (*Lucido v. Superior Court*, *supra*, 51 Cal.3d at p. 341, fn. 3.)

of any question of construction or validity arising under the . . . contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time. . . . [T]he declaration shall have the force of a final judgment. The declaration may be had before there has been any breach of the obligation in respect to which said declaration is sought."

Unlike coercive relief (such as damages, specific performance, or an injunction) in which a party is ordered by the court to do or to refrain from doing something, a declaratory judgment merely declares the legal relationship between the parties. Under the provisions of the Act, a declaratory judgment action may be brought to establish rights once a conflict has arisen, or a party may request declaratory relief as a prophylactic measure before a breach occurs. To further the purpose of providing a rapid means of resolving a dispute or a potential dispute, declaratory actions are given precedence in setting trial dates. (§ 1062.3.)

Like the doctrine of res judicata, declaratory relief promotes judicial economy. A declaratory judgment action provides parties with an efficient means of adjudicating a disputed issue. Often, a declaratory remedy will end the controversy between the parties. If a court finds that a plaintiff has no rights under a contract, the dispute is resolved and no further litigation is likely. If, on the other hand, the court determines that a defendant is in breach of a contract, it is likely that the defendant will comply with the contract rather than risk a subsequent suit for damages or specific performance, since the prior declaratory judgment will serve as a conclusive determination of defendant's breach. (§ 1060.) As the Court of Appeal explained in *Lortz v. Connell* (1969) 273 Cal.App.2d 286, 301 [78 Cal.Rptr. 6], "[t]he salutary purpose of the declaratory relief provisions is to permit a prompt adjudication of the respective rights and obligations of the parties in order to relieve them from uncertainty and insecurity with respect to rights, status and other legal relations. . . . It enables a party to get a prompt adjudication without a dispute over the damages suffered."

■ While declaratory judgments are issue preclusive, they are not necessarily claim preclusive. The Act provides an exemption from the bar of res judicata for declaratory judgments, stating: "The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts." (§ 1062.)
■ The question raised by the present case is the extent to which this

section exempts declaratory judgments from traditional rules of claim preclusion. MPS argues that this section of the Act provides an exemption from res judicata for judgments awarding *both* declaratory *and* coercive relief. Monsanto counters that only *purely* declaratory judgments are exempt from the res judicata bar under this section. The Court of Appeal in this case agreed with Monsanto, holding that claim preclusion does apply to bar the suit in *Mycogen II* because in *Mycogen I* MPS sought both declaratory relief and specific performance.

The Court of Appeal cited *Lortz v. Connell, supra,* 273 Cal.App.2d 286 (*Lortz*), for the proposition that an action for purely declaratory relief does not bar a later action for damages. In *Lortz,* the Court of Appeal described the preclusive effect of an action brought under the Act, articulating "[t]he general rule . . . which does not bar the right to subsequent coercive relief *if it is not sought or litigated in the earlier action.*" (273 Cal.App.2d at p. 301, italics added.) Under this rule, the *Lortz* court "concluded that the present action for damages is not barred by the earlier action for declaratory relief." (*Ibid.*)

The Court of Appeal found the present case distinguishable from *Lortz* because MPS had sought, and was granted, not only a declaratory judgment but also specific performance of the contractual duty to convey Monsanto technology. Since both declaratory relief *and* coercive relief were awarded in the first suit, MPS was barred, under the doctrine of res judicata, from bringing a subsequent suit for damages.

The conclusion of the *Lortz* court and of the Court of Appeal in the present case, that only purely declaratory judgments are exempt from the bar of res judicata, is consistent with the view espoused by the Restatement Second of Judgments and the majority of courts that have considered this issue. (See, e.g., *Stericycle, Inc. v. City of Delavan* (7th Cir. 1997) 120 F.3d 657, 659-660 [applying Wis. law]; *Cimasi v. City of Fenton* (8th Cir. 1988) 838 F.2d 298, 299 [applying Miss. law]; *Minneapolis Auto Parts Co. v. City of Minneapolis* (8th Cir. 1984) 739 F.2d 408, 410 [applying Minn. law]; *Mandarino v. Pollard* (7th Cir. 1983) 718 F.2d 845, 847-849 [applying Ill. law]; *State v. Smith* (Alaska 1986) 720 P.2d 40, 41, fn. 2.)

The Restatement Second of Judgments, section 33, discusses the preclusive effect of a declaratory judgment.[8] Comment c to the Restatement, under the heading "Effects as to matters not declared," states, "When a plaintiff

---

[8]This section states, "[a] valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the

seeks *solely* declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. Instead, he is seen as merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant. The effect of such a declaration, under this approach, is not to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or defendant may pursue further declaratory or coercive relief in a subsequent action." (Rest.2d Judgments, § 33, com. c, p. 335, italics added.) The Restatement distinguishes these actions in which a plaintiff seeks *solely* declaratory relief from cases where "[p]leaders sometimes interpolate declaratory prayers redundantly in standard actions." In the latter actions, "[f]or res judicata purposes the action should be treated as an adversary personal action concluded by a personal judgment with the usual consequences of merger, bar, and issue preclusion." (Rest.2d Judgments, § 33, com. d, p. 337.)

As the federal district court recently explained in *Criste v. City of Steamboat Springs* (D.Colo. 2000) 122 F.Supp.2d 1183, 1187: "[T]he great weight of authority holds that where a party seeks declaratory as well as coercive relief, the declaratory judgment exception to res judicata does not apply." In *Criste*, the plaintiff was barred by res judicata from bringing a second action for damages under federal law, after obtaining both a declaratory judgment and injunctive relief in a prior state action against the same defendant. (*Id.* at p. 1190.) The court followed Colorado law, which, like California law, applies the rule that a declaratory judgment does not constitute an absolute bar to subsequent proceedings. (*Id.* at p. 1187, citing *Atchison v. City of Englewood* (1973) 180 Colo. 407, 414 [560 P.2d 140, 143].)

Articulating the policy reasons underlying the rule, the *Criste* court stated: "First, to allow the exception to extend beyond purely declaratory relief would run counter to the purpose of declaratory actions, which is 'to provide a remedy that is simpler and less harsh than coercive relief.' [Citation.] Perhaps more importantly, to permit some but not other coercive actions to accompany a request for declaratory relief would open the door to uncertainty and potential claim splitting. The Court sees no justification, for example, for applying ordinary claim preclusion rules to cases where the plaintiff seeks declaratory and damage relief, but a different set of rules to cases where the plaintiff seeks declaratory and injunctive relief. Moreover, if courts were to apply a more lenient set of rules to the latter situation, this would encourage parties to split their causes of action to gain a second bite at the apple if not successful in the first lawsuit. To avoid uncertainty, application of preclusion rules must be clear. Once a party seeks and obtains

matters declared, and, in accordance with the rules of issue preclusion, as to any issues actually litigated by them and determined in the action." (Rest.2d Judgments, § 33.)

coercive relief, the basis for applying the declaratory judgment exception evaporates, and ordinary rules of claim preclusion must apply." (*Criste v. City of Steamboat Springs, supra,* 122 F.Supp.2d at p. 1189.)

Notwithstanding the above precedent and the policy considerations in favor of exempting actions from the bar of res judicata only when they seek solely declaratory relief, MPS argues that under section 1062, when the relief provided in an initial action is *primarily* declaratory, res judicata does not operate to bar a second suit for coercive relief. When relief incidental to a declaratory judgment is awarded, MPS contends that claim preclusion should not apply. ■ A court, in granting declaratory relief, has the power to award additional relief. (See, e.g., *Record Mach. & Tool Co. v. Pageman Holding Corp.* (1954) 42 Cal.2d 227, 234 [266 P.2d 1]; *Bertero v. National General Corp.* (1967) 254 Cal.App.2d 126, 147 [62 Cal.Rptr. 714] (*Bertero*).) ■ MPS argues that once equitable jurisdiction is exercised by a court and a declaratory judgment is awarded, the section 1062 res judicata exception applies to the subject matter covered by the declaration, even though additional relief is awarded.

To support its argument, MPS contends that the language in section 1062, providing that no judgment "under this chapter" shall preclude any party from obtaining additional relief based upon the same facts, includes judgments awarding both declaratory and coercive relief. Because a court may award additional relief along with a declaratory judgment, such a judgment is one that falls "under this chapter" and is therefore exempt from the ordinary rules of claim preclusion.

We do not agree with MPS's proposed interpretation of the Act. Under section 1062, a judgment "under this chapter" refers to a judgment awarding solely declaratory relief, not to one awarding both declaratory and coercive relief. The "chapter" referred to in section 1062 is chapter 8, entitled Declaratory Relief. Under section 1060 of this chapter, while a party may *request* additional relief along with a prayer for declaratory relief, the only relief that is *awarded* "under this chapter" is declaratory relief. We therefore read the reference in section 1062 to a judgment "under this chapter" as denoting a purely declaratory judgment.

Further, additional language in the Act demonstrates that the reference to a judgment "under this chapter" in section 1062 designates a judgment awarding solely declaratory relief. Actions seeking only declaratory relief are granted trial-setting preference under section 1062.3. These purely declaratory actions are referred to as "actions brought under the provisions of this chapter" (*ibid.*), mirroring the language used in section 1062. Actions

requesting both declaratory and additional coercive relief do not receive the same trial-setting preference, however. These hybrid actions are referred to in the Act as "[a]ny action brought under the provisions of this chapter in which the plaintiff seeks any relief, in addition to a declaration of rights and duties." (§ 1062.3, subd. (b).) Thus, the Act refers to actions for purely declaratory relief in general terms as actions "brought under the provisions of this chapter," whereas the Act specifically defines when it is referring to actions seeking both declaratory and coercive relief. The general reference in section 1062 to a judgment "under this chapter," then, provides an exemption from the bar of res judicata only for actions that are purely declaratory in nature.

While MPS would have us believe that section 1062 provides an exemption from res judicata for some actions seeking both declaratory and coercive relief, MPS does not contend that all such actions should be exempt from the bar of res judicata. For example, MPS does not argue that an action seeking declaratory relief and monetary damages should be exempt from the res judicata bar. Instead, MPS attempts to carve out a middle ground, stating that actions that are *primarily* declaratory in nature should also be exempt.

Under MPS's interpretation of the language of section 1062, however, the reference to judgments "under this chapter" would seem to include all remedies that can be awarded by a court along with declaratory relief, including damages. This reading of the statute would provide parties with an easy way to escape the res judicata bar. By attaching a prayer for declaratory relief in the complaint, a party could evade the effect of res judicata in virtually every lawsuit. Clearly, this is not what the Legislature intended. The res judicata exception afforded by section 1062 is a narrow one, meant to provide parties with a quick way of resolving disputes without the need to assert all claims based on the same cause of action. Any broader reading of this exception would swallow the rule of res judicata at the expense of judicial economy and fairness to the parties.

MPS additionally argues that limiting the application of section 1062 to actions that are purely declaratory would penalize parties in cases where a court on its own initiative decides to exercise its equitable jurisdiction and grant relief in addition to a declaratory judgment. In the present case, however, the *Mycogen I* trial court did not grant specific performance on its own initiative. It was MPS that requested both declaratory relief and specific performance. In its prayer for relief, MPS requested a declaration of rights under the license agreement *and* an "order that defendant Monsanto specifically perform the relevant terms of the Agreement and fulfill its obligations to MPS under paragraph 2.3(c) of the Agreement." This request for specific

performance included detailed descriptions of the obligations Monsanto was to be ordered to fulfill. Therefore, this is not a case where coercive relief was awarded on a court's own initiative; instead, MPS stated a cause of action for specific performance, and was awarded this relief by the court's judgment. ▮▮▮▮ Accordingly, we decline to address this issue in the abstract and will await to address it when, and if, it arises.[9]

▮▮ We are not convinced that parties will be penalized by such a rule limiting section 1062 to cases in which a party seeks only a declaratory judgment. A party may easily avoid the preclusive effect of a judgment by bringing an initial suit requesting purely declaratory relief. If necessary, the party may subsequently bring a suit for coercive relief.

Further, we find unpersuasive the view of the minority of courts that extend the declaratory judgment exception to cases involving *both* declaratory *and* coercive relief. (See, e.g., *Edward B. Marks M. Corp. v. Charles K. Harris M. P. Co.* (2d Cir. 1958) 255 F.2d 518, 522 [judgment for declaratory and injunctive relief did not preclude further relief in a separate action]; *Buckeye Com. Hope Found. v. City of Cuyohoga Falls* (N.D. Ohio 1997) 970 F.Supp. 1289, 1301-1302 ["Ohio law presumes that some sort of injunctive relief may be required in order to give meaning to a declaratory judgment"]; *Pacemaker Food Stores, Inc. v. Seventh Mont Corp.* (1986) 144 Ill.App.3d 781 [97 Ill.Dec. 727, 493 N.E.2d 390, 393-394] [same].) Such an exception to res judicata principles would create uncertain preclusion rules and would threaten to swallow the rule against claim splitting, permitting a party to evade a res judicata bar merely by appending a request for declaratory relief to a claim for specific performance or other coercive relief.

The broad exception to res judicata preclusion advocated by MPS would either provide a claim preclusion exemption for any action containing a request for declaratory relief, or it would require courts to engage in a case-by-case analysis to determine whether an initial action was *primarily* declaratory. We reject this proposed approach as inconsistent both with the statutory language and with the purpose of the doctrine of res judicata, to

---

[9]Additionally, we note that even if a party brings a request for purely declaratory relief and a court's declaration contains a phrase such as " 'and the parties are ordered to perform thereunder,' " such a judgment is not converted into one for specific performance. (*Bertero, supra,* 254 Cal.App.2d at p. 138.) If a plaintiff's case is "filed and tried on the theory that the action [is] one for declaratory relief," and "[t]he complaint is so captioned and the prayer is for a judgment declaring the rights of the parties," the addition of such words in the court's order does not convert the judgment to one for specific performance rather than declaratory relief. (*Id.* at p. 135.) Therefore, a judgment in such a case would be one for purely declaratory relief and would fall under the res judicata exception provided by section 1062.

provide parties with consistent and predicable claim preclusion rules. Therefore, we conclude that since the first action did not seek purely declaratory relief, any subsequent suit based on the same cause of action is barred.

### III

Given our determination that the judgment in *Mycogen I*, having awarded both declaratory and coercive relief, has a preclusive effect, we now consider whether the claims brought in *Mycogen II* are based on the same cause of action. We conclude that both suits are based on the same cause of action, and therefore the suit in *Mycogen II* is barred by res judicata.

■ California's res judicata doctrine is based upon the primary right theory. As we explained in *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681-682 [34 Cal.Rptr.2d 386, 881 P.2d 1083]:

"The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. [Citation.] . . .

"As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' [Citation.] The primary right must also be distinguished from the *remedy* sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.' [Citation.]

"The primary right theory . . . is invoked . . . when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result by either of two means: (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citations]; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata."

■ The judgment in *Mycogen I* bars the action brought in *Mycogen II* if both suits seek to vindicate the same primary right. The Court of Appeal in

this case found that the proceedings in *Mycogen I* and *Mycogen II* arose from the same injury, and therefore concluded that the proceeding in *Mycogen II* was barred. We agree.

In both *Mycogen I* and *Mycogen II*, MPS alleged a breach of the same contract, differing only in the requested remedy. In *Mycogen I*, MPS sought, and was awarded, specific performance. In *Mycogen II*, MPS sought damages. Arguing that the res judicata bar does not apply to its suit for damages, MPS offers various grounds for claiming that this second suit vindicated a separate primary right. At the pleading stage, after Monsanto successfully demurred to the initial *Mycogen II* complaint on res judicata grounds, MPS overcame another demurrer by arguing in its amended complaint that the rule against splitting a cause of action does not bar "sequential breach of contract suits in the instance of continuing breach." At trial, however, MPS premised its damages claim on the argument that Monsanto had committed a *single* breach in 1993 by not delivering the genes to MPS.

In the Court of Appeal, MPS resurrected its continuing breach theory, arguing that its second action for contract damages was based on continuous or successive breaches of the license agreement. The Court of Appeal rejected this argument, finding that instead of continuing breaches, "there was a single option . . . that was repudiated conclusively." Finally, in its appeal to this court, MPS has again abandoned its continuing breach theory, arguing here that the damages requested in *Mycogen II* were "for the delay in the implementation of specific performance relief," based on Monsanto's initial breach of the contract in 1993. MPS contends that this second action, for damages caused by delay in implementing the decree of specific performance, is a separate cause of action under California law.[10]

■ It is well established that a judgment in an action for breach of contract bars a subsequent action for additional relief based on the same breach. (*Holmes v. David H. Bricker, Inc.* (1969) 70 Cal.2d 786, 790 [76 Cal.Rptr. 431, 452 P.2d 647]; see *Abbott v. The 76 Land and Water Co.* (1911) 161 Cal. 42, 46-51 [118 P. 425]; *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1766, 1770 [31 Cal.Rptr.2d 224].) Additionally, a party may not obtain both specific performance and damages for the same breach of contract, either in single or multiple actions. "A plaintiff . . . may not be awarded both [specific performance and damages for breach of contract] to the extent such an award would constitute a double recovery." (*Rogers v. Davis* (1994) 28 Cal.App.4th 1215, 1220 [34 Cal.Rptr.2d 716].)

[10]MPS does not contend in this appeal that Monsanto committed successive or continuous breaches of the license agreement. Having reviewed the record, we agree with the Court of Appeal that Monsanto's nonperformance and conclusive repudiation of the license agreement in 1993 constituted a total breach of contract.

 MPS argues that despite the rule barring such double recovery, a plaintiff may recover both specific performance and damages for delay in the commencement of the defendant's performance. While this may be true, a plaintiff requesting both specific performance and delay damages must request both remedies in the initial proceeding. As we made clear in *Abbott v. The 76 Land and Water Co., supra,* 161 Cal. at page 47 (*Abbott*), a decree for specific performance bars a subsequent action for monetary relief based on the same breach of contract, even if this subsequent action seeks to recover for delay in performance occasioned by the litigation.[11] A plaintiff is "bound to obtain all his relief on account of the breach in one action, and could not recover part in one and part in another." (*Abbott, supra,* at p. 47.)

In *Abbott,* the plaintiff's assignor, a buyer of land, had sued to obtain specific performance of a contract to convey property. The buyer eventually prevailed, obtaining a judgment confirming the existence of the buyer's contractual right and directing the defendant to execute a deed for the property. (See *Abbott, supra,* 161 Cal. at pp. 45-46.) The buyer assigned his claim to the plaintiff, who subsequently brought a second action to obtain damages for depreciation in the value of the property during the delay in delivery of the property after the decree of specific performance. We held that the second action for delay damages was barred: "[A] decree of specific performance of the contract . . . is a bar to any further relief based on the claim of the breach, for . . . an action for specific performance necessarily involves not only the question of such performance, but also all claims for compensation and damage on account of the delay in performance." (*Id.* at p. 49.)

In *Abbott,* we made clear that a breach of contract gives rise to a single cause of action in which all remedies based on that breach must be requested. As we noted, "[i]t is true that [plaintiff] had an election of remedies. He might have brought an action to recover such damages as were caused him by the breach, or he might, as he did, bring his action for specific enforcement of the contract, and in such action obtain not only the specific enforcement of his contract, but also such damages as he was lawfully entitled to, for it is thoroughly settled that a court of equity taking jurisdiction for the purpose of specifically enforcing a contract takes full jurisdiction

---

[11]We note that MPS now alleges that the damages it received in *Mycogen II* were to compensate it for delay in the implementation of specific performance relief. Monsanto counters, however, that it did not delay in complying with the judgment in *Mycogen I* once it was entered in 1996. In fact, the trial court found that Monsanto was not in contempt of the judgment in *Mycogen I* and determined that, under the licensing agreement, Monsanto was required only to license genes, and not the germplasm desired by MPS. In any event, in its complaint in *Mycogen II,* MPS sought relief only for breach of contract.

of all the rights of the parties, whether legal or equitable, and may award such legal damages as the [plaintiff] may have suffered by reason of the delay in performance. [Citation.] But, under elementary principles, he was bound to obtain all his relief on account of the breach in one action, and could not recover part in one and part in another." (*Abbott, supra,* 161 Cal. at p. 47.)

■ Delay damages must be requested in the initial action for breach of contract, even if they are still speculative at the time of the suit. We stated in *Abbott* that "it is no warrant for a second action that the party may not be able to actually prove in the first action all the items of the demand, or that all the damage may not then have been actually suffered. He is bound to prove in the first action not only such damage as has been actually suffered, but also such prospective damage by reason of the breach as he may be legally entitled to, for the judgment he recovers in such action will be a *conclusive adjudication as to the total damage on account of the breach.*" (*Abbott, supra,* 161 Cal. at p. 48, italics added; see also *Coughlin v. Blair* (1953) 41 Cal.2d 587, 598 [262 P.2d 305] [stating that a second action for damages based on same breach of contract "would be successfully opposed by the plea of res judicata"]; *Vanguard Recording Society, Inc. v. Fantasy Records, Inc.* (1972) 24 Cal.App.3d 410, 416 [100 Cal.Rptr. 826] [finding that the reasoning in *Abbott* also applies when the first action was for injunctive relief rather than specific performance].) As *McFaddin v. H.S. Crocker Co.* (1963) 219 Cal.App.2d 585, 589 [33 Cal.Rptr. 389], explained: "This rule is generally applicable with respect to the subsequent litigation even though the plaintiff was not aware of the particular elements of damage therein sought to be recovered at the time of the pendency of the prior action."

■ Thus, we reject MPS's argument that it should be permitted to bring a second suit for delay damages because of the speculative nature of damages at the time of Monsanto's breach. Additionally, we note that at the time of Monsanto's breach in 1993, MPS was aware of the prospect of damages based on delay in performance. ■ ■ ■ In attempting to enforce the contract, MPS had repeatedly warned Monsanto that any delay in performance would cause substantial damages. Any of these incidental damages for delay should have been sought by MPS as part of the action for specific performance.[12]

■ In an attempt to circumvent the well-settled principles set forth in *Abbott,* MPS argues, relying on *Title Guarantee & Trust Co. v. Monson*

---

[12]Further, we reject MPS's argument that the trial court erred in denying MPS's 1997 motion for consolidation of the proceedings in *Mycogen I* and *Mycogen II.* Any damages necessary to make MPS whole should have been requested at the outset of *Mycogen I,* even if

(1938) 11 Cal.2d 621 [81 P.2d 944] (*Title Guarantee*), that the damages it sought in *Mycogen II* involved a primary right distinct from the primary right vindicated by the specific performance judgment in *Mycogen I*. We are unconvinced and find *Title Guarantee* inapplicable to the present case.

Unlike *Abbott*, *Title Guarantee* involved two suits seeking to vindicate separate and distinct rights. In the first action, the plaintiff sued the defendants for specific performance to obtain possession of real property after a default on a secured debt. In the second action, the plaintiff requested damages based on a separate wrong: rental income withheld by the defendants when the property was unlawfully possessed, after the judgment of specific performance but before the delivery of the property to the plaintiffs. (See *Title Guarantee, supra*, 11 Cal.2d at p. 624.) In *Title Guarantee*, we found that under the specific facts of the case, the second suit for wrongfully withheld rents "may be considered as constituting a *separate and distinct cause of action*." (*Id.* at p. 633, italics added.) We concluded that the two actions vindicated different rights. The suit for rents was not "necessary or indispensable" to the action for possession of the property. (*Ibid.*) Each action was based on a breach of a separate covenant at different times, and so the judgment in the first action did not bar the plaintiff from bringing the second action. *Title Guarantee* is therefore inapplicable because the plaintiff was not seeking delay damages based on the same breach, as in *Abbott* and the present case, but instead was seeking damages based on the separate breach of an independent right.

In the present case, there were no separate and distinct covenants breached at different times. Instead, there was a single breach of contract when Monsanto refused to negotiate licenses and repudiated the agreement. All remedies requested by virtue of this breach must be requested in a single action or be forfeited. MPS could have sought alternate remedies, such as requesting either total damages or specific performance plus delay damages, but they must have been pled in the same suit. (See *Crowley v. Katleman, supra*, 8 Cal.4th at p. 682 ["[t]he primary right must . . . be distinguished from the *remedy* sought"]; *Steele v. Litton Industries, Inc.* (1968) 260 Cal.App.2d 157, 172 [68 Cal.Rptr. 680] ["if the trial proceeds to judgment on one alternative remedy such judgment would constitute a bar to the trial in a subsequent action on the obligation which plaintiff seeks to enforce, but on a different theory."].)

such damages were speculative at the time of suit. MPS cannot cure its failure to request damages in the initial suit and evade the res judicata bar by filing a motion for consolidation of the two actions.

We conclude that both *Mycogen I* and *Mycogen II* were based on the violation of the same primary right, Monsanto's breach of contract.[13] Therefore, MPS's second action in *Mycogen II* is barred under the doctrine of res judicata. The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and O'Leary, J.,* concurred.

---

[13]Amici curiae urge this court to abandon the primary right theory and adopt the transactional approach of the Restatement Second of Judgments. As the result in this case would be the same under either theory, we decline to reconsider our long-standing approach to res judicata.

*Associate Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.