Filed 4/29/14  Tabrizi v. JP Morgan Chase CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| BEHNAM TABRIZI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JP MORGAN CHASE BANK et al.,<br><br>    Defendants and Respondents. | D062847<br><br><br>(Super. Ct. No. 37-2012-00090805-CU-OR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Timothy Taylor, Judge.  Affirmed.


Law Offices of Dennis Moore and Dennis Howard Moore for Plaintiff and Appellant

Alvarado Smith, Theodore E. Bacon and David J. Masutani for Defendants and Respondents.

Behnam Tabrizi appeals from an adverse judgment on grounds of res judicata in his lawsuit against JP Morgan Chase Bank (Chase) and California Reconveyance

Company (CRC) arising out of the foreclosure on two properties that Tabrizi owns. The trial court's conclusion that res judicata applied was based on the judgments in two prior lawsuits that Tabrizi filed to challenge Chase's foreclosure on the two properties. We conclude that the trial court properly sustained the demurrer on the ground of res judicata, and we accordingly affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Tabrizi's Default on Two Deeds of Trust*

This lawsuit challenged Chase's attempt to foreclose on two properties owned by Tabrizi.

1.    *The Northern Lights Property*

The first property is located at 7571 Northern Lights in San Diego (the Northern Lights property). In October 2007 Tabrizi obtained a loan in the amount of $2,430,000 from Washington Mutual Bank (WaMu) secured by a deed of trust encumbering the Northern Lights property, with CRC as the trustee.

The Federal Deposit Insurance Corporation (the FDIC) was appointed as receiver of WaMu in September 2008. Pursuant to an agreement between Chase and the FDIC, Chase purchased certain assets of WaMu, pursuant to which Chase allegedly became the beneficiary of the deed of trust on the Northern Lights property.[1]

---

[1]    Tabrizi alleges in the operative complaint in this action that the agreement between WaMu and the FDIC has not been finalized.

Tabrizi became delinquent on his loan payments on the Northern Lights property, and CRC and Chase took steps to foreclose. Specifically, on April 13, 2010, CRC recorded a notice of default on the deed of trust secured by the Northern Lights property, stating that Tabrizi was in default on his loan payments in the amount of $55,448. A notice of trustee sale was recorded on September 1, 2011, for the Northern Lights property.

2. *The Encendido Property*

Tabrizi's second property is located at 14911 Encendido in San Diego (the Encendido property). Tabrizi obtained a loan from WaMu in January 2008 in the amount of $2,000,000 secured by a deed of trust encumbering the Encendido property. In 2010, CRC was substituted as the trustee for the deed of trust on the Encendido property. As a result of Chase's purchase of certain assets of WaMu, Chase also allegedly became the beneficiary of the deed of trust on the Encendido property.

Tabrizi became delinquent on his loan payments on the Encendido property. Specifically, on February 8, 2010, CRC recorded a notice of default on the deed of trust secured by the Encendido property, stating that Tabrizi owed $92,894.81 in loan payments. A notice of trustee sale was recorded on October 14, 2010, for the Encendido property.

B. *The Lawsuits*

Tabrizi filed two separate lawsuits in San Diego County Superior Court to challenge the foreclosures on the Northern Lights property and the Encendido property.

3

1.    *The Northern Lights Lawsuit*

With respect to the foreclosure on the Northern Lights property, in May 2010 Tabrizi filed suit against Chase in San Diego County Superior Court (*Tabrizi v. Chase Home Finance, LLC*, No. 37-2010-00091526-CU-OR-CTL) (the Northern Lights lawsuit).[2] The initial complaint alleged several causes of action asserting various theories of fraud and concealment, as well as negligence.  A second amended complaint alleged causes of action for fraud, wrongful foreclosure, and violation of Business and Professions Code section 17200.  In the Northern Lights lawsuit, Tabrizi alleged (1) that Chase was improperly foreclosing on the Northern Lights property because WaMu had fraudulently induced Tabrizi to obtain a loan he could not afford; (2) that Chase had unreasonably denied Tabrizi the right to modify the terms of his loan; and (3) that Chase did not follow the required statutory procedures governing foreclosures, which purportedly included "[f]ailure to serve upon [Tabrizi] notice of assignment of the Note pursuant to *California Civil Code* § 2932 et [s]eq."  Tabrizi sought an order restraining Chase from proceeding with the foreclosure, and an order rescinding any sale or transfer of title.

---

[2]    As far as the appellate record reflects, CRC was not named as a defendant in the Northern Lights lawsuit.  Instead, the original complaint and the second amended complaint alleged that Quality Loan Services Corp. was the trustee to the deed of trust secured by the Northern Lights property.  We note that in supplemental briefing we requested from the parties, CRC stated that although not reflected in the appellate record, it was briefly sued as a defendant in one version of the complaint in the Northern Lights lawsuit (which is not contained in the appellate record), but was effectively dismissed without prejudice when an amended complaint was filed that did not name CRC as a defendant.

As relevant here, the initial complaint in the Northern Lights lawsuit specifically alleged that Chase "claims that it is the current holder of the mortgage and/or other security interests taken in the . . . loan transaction, despite the fact that public records do not reflect any assignments from W[a]M[u] to [Chase] as required by law . . . ."

Chase prevailed in the Northern Lights lawsuit by obtaining summary judgment. The trial court ruled that Chase had not assumed liability for WaMu's alleged misconduct and that Chase submitted undisputed evidence that it complied with all of the statutory requirements for foreclosure.

2.     *The Encendido Lawsuit*

With respect to the Encendido property, in October 2010 Tabrizi filed suit against Chase and CRC in San Diego County Superior Court (*Tabrizi v. Chase Home Finance, LLC*, No. 37-2010-00103336-CU-OR-CTL) (the Encendido lawsuit).  The initial complaint alleged claims for fraud, failure to comply with the statutory requirement for foreclosure, and violation of Business and Professions Code section 17200.  Later versions of the complaint added claims for unjust enrichment based on improper foreclosure and breach of an alleged contract to allow Tabrizi to short-sell the Encendido property.  As in the Northern Lights lawsuit, Tabrizi alleged that WaMu had fraudulently induced Tabrizi to obtain a loan he could not afford, that Chase unreasonably refused to modify the terms of the loan, and that Chase did not comply with the statutory requirements for foreclosure.  In his original complaint, as a remedy, Tabrizi sought, among other things, an order preventing the foreclosure of the Encendido property.  In

5

later versions of the complaint, Tabrizi sought damages and an order rescinding the loan transactions.

As relevant here, both the second amended complaint and third amended complaint alleged on information and belief that Chase might not "have physical custody of Tabrizi's original Mortgage and therefore the foreclosure process is void." Those complaints also alleged that "[Chase] may have no rights in title or interest to Tabrizi's property. In fact, WaMu is in litigation against the F[D]IC and [Chase] for issues related to forced devolution of WaMu assets and stock to [Chase] and as such, there is a question of fact as to whether [Chase] has any rights to Tabrizi's property under the circumstances."

Chase and CRC prevailed in the Encendido lawsuit when the trial court sustained their demurrers.

3. *The Instant Lawsuit*

After the judgments against him in the Northern Lights lawsuit and the Encendido lawsuit in 2011, Tabrizi filed the instant lawsuit in January 2012 seeking to prevent foreclosure on the Northern Lights property and the Encendido property. The first amended complaint asserts three causes of action against Chase and CRC. The first cause of action seeks to "void and cancel" the notices of default and notice of trustee's sale as to both the Northern Lights property and the Encendido property. The second cause of action seeks injunctive relief preventing the foreclosure sales. The third cause of action seeks declaratory relief that Chase does not have the right to enforce the notes on either the Northern Lights property and the Encendido property.

6

The instant action focuses on a theory that was only briefly mentioned in the Northern Lights lawsuit and the Encendido lawsuit. Specifically, Tabrizi alleges that because of irregularities when Chase acquired the assets of WaMu and took over as beneficiary of the deeds of trust encumbering the Northern Lights property and the Encendido property, Chase does not have the authority to foreclose on those properties. As to the promissory notes for both the Northern Lights property and the Encendido property, the first amended complaint alleges: "Chase has not received any assignment of [the note] in any manner"; "Chase was never in possession of [the note]"; "Chase never acquired the rights of Wa[M]u"; "Chase is not a successor to Wa[M]u"; [the note] has never been delivered to Chase in any manner"; "[e]ven if [the note] was delivered to Chase in any manner, the transferor of [the note] did not have any rights to enforce the terms of [the note]"; "[the note] was never assigned to Chase or assigned in favor of Chase"; "[s]ince Chase (1) was never in possession of [the note], (2) never acquired rights of Wa[M]u, (3) is not a successor to Wa[M]u, and since (4) [the note] has never been delivered to Chase in any manner, and (5) [the note] was never assigned to Chase or in favor of Chase, Chase cannot enforce [the note]." The first amended complaint alleges that instead of being entitled to enforce the notes, "Chase is the servicer" of the loans, and thus is not entitled to foreclose.

Chase and CRC demurred to the first amended complaint on the ground of res judicata arising from the judgments in the Northern Lights lawsuit and the Encendido lawsuit. In support of the demurrer, Chase and CRC filed an unopposed request for judicial notice concerning the Northern Lights lawsuit and the Encendido lawsuit.

7

The trial court sustained the demurrer on the basis of res judicata and entered judgment against Tabrizi.

Tabrizi appeals from the judgment.

II

DISCUSSION

A.    *Standard of Review*

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' [Citation.] 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.] In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153.)

B.    *The Doctrine of Res Judicata*

The trial court sustained the demurrer on the grounds of res judicata. "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*).) "To operate as a bar a judgment must be final, on the same claim or cause of action, between the same parties, and must be an adjudication on the merits." (*McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 794 (*McKinney*).)

8

C.	*CRC May Assert Res Judicata for the Northern Lights Lawsuit Because It Was in Privity with Chase, Which Did Obtain Judgment in Its Favor*

As an initial matter we discuss an issue that was not raised by Tabrizi in his appeal but which we noted upon our review of the record and afforded the parties an opportunity to address pursuant to Government Code section 68081.

It is well established that claim preclusion arises only if the current lawsuit and the previous lawsuit are "between the same parties or parties in privity with them" (*Mycogen*, *supra*, 28 Cal.4th at p. 896) and if there was "an adjudication on the merits" as to those parties (*McKinney*, *supra*, 110 Cal.App.3d at p. 794).[3]

There was no final adjudication on the merits against CRC in the Northern Lights lawsuit, because (according to CRC's representation) CRC was only briefly a party and was dismissed from the lawsuit without prejudice. Chase obtained a judgment on the merits in the Northern Lights lawsuit, but CRC did not.

---

[3]	CRC contends that to apply claim preclusion, there is no requirement that the party asserting claim preclusion have been a party to or in privity with a party to the previous lawsuit. CRC contends that it is sufficient that the party *against whom* claim preclusion is asserted was a party to the previous lawsuit. We disagree. There are two types of res judicata — claim preclusion and issue preclusion (also referred to as collateral estoppel). (*Mycogen*, *supra*, 28 Cal.4th at p. 896, fn. 7.) For *issue preclusion* to apply, several requirements must be met, including that "the party *against whom* preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, italics added (*Lucido*).) Accordingly, for issue preclusion to apply there is no requirement that the party asserting issue preclusion have obtained a final judgment in the previous action. However, the type of res judicata at issue here is not *issue preclusion*; it is *claim preclusion*. Accordingly, for CRC to assert res judicata it must establish that it was a party who obtained a final judgment in the Northern Lights lawsuit or was in privity with such a party.

9

As we have explained, however, a party may still rely on claim preclusion if it was *in privity with* a party who obtained a final judgment in an action. (*Mycogen*, *supra*, 28 Cal.4th at p. 896.) Therefore, we examine whether CRC was in privity with Chase and may, on that basis, assert claim preclusion arising from the Northern Lights lawsuit.

"The term 'privity' refers to some relationship or connection with the party which makes it proper to hold 'privies' bound with the actual parties. ' "Who are privies requires careful examination into the circumstances of each case as it arises." ' [Citations.] The courts have abandoned application of rigid categories in favor of a practical approach which addresses the question of 'whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion.' " (*Martin v. County of Los Angeles* (1996) 51 Cal.App.4th 688, 700.)

As relevant here, res judicata arises when one party is in privity with another because the parties' relationship is "analogous to that of principal and agent." (*Triano v. F.E. Booth & Co.* (1932) 120 Cal.App. 345, 347.) "If the party who actually causes the injury is free from liability by reason of his acts, it must follow that his principal is entitled to a like immunity. In other words, a judgment in favor of the immediate actor is a bar to an action against one whose liability is derivative from or dependent upon the culpability of the immediate actor." (*Id*. at pp. 347-348.)

Although the role of a trustee to a deed of trust is complex and depends on the transaction at issue, in the foreclosure on the Northern Lights property, CRC (as the trustee on the deed of trust) was acting as an agent to its principal, Chase, who was the beneficiary on the deed of trust. "A trustee under a deed of trust has neither the powers

10

nor the obligations of a strict trustee; rather, he serves as a kind of common agent for the trustor and the beneficiary. . . . His agency is a passive one, for the limited purpose of conducting a sale in the event of the trustor's default or reconveying the property upon satisfaction of the debt. . . . 'The "trustee" of a deed of trust is not a trustee at all in a technical or strict sense . . . .' . . . A trustee . . . , while *an agent for both the beneficiary and the trustor*, does not stand in a fiduciary relationship to either." (*Hatch v. Collins* (1990) 225 Cal.App.3d 1104, 1111-1112, citations omitted, italics added.) The trustee of a deed of trust "acts as *a common agent for the trustor and the beneficiary* of the deed of trust," with the trustee's only duties being "(1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust." (*Vournas v. Fidelity Nat. Title Ins. Co.* (1999) 73 Cal.App.4th 668, 677, italics added.) Logically, as a common agent, when fulfilling the *first* of a trustee's duties (i.e., foreclosing on a deed of trust), a trustee is acting as an agent of the beneficiary; when fulfilling the second of a trustee's duties (reconveying the deed of trust upon satisfaction), a trustee is acting as an agent of the trustor. (Cf. *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 515 [trustee to deed of trust recorded a notice of default " 'as agent for beneficiary' "].)

Here, because Tabrizi challenges the foreclosure on the deed of trust for the Northern Lights property, CRC was acting as an agent of the beneficiary, Chase, when performing the acts on which Tabrizi based both this lawsuit and the Northern Lights lawsuit. Indeed, as we understand Tabrizi's allegations against CRC, because CRC was acting on behalf of Chase, all of CRC's alleged liability is derivative of Tabrizi's claim

11

that Chase had no authority to initiate the foreclosure. Accordingly, as an agent of Chase, CRC was in privity with Chase for the purpose of the Tabrizi's attempt in the Northern Lights lawsuit to challenge the foreclosure of the Northern Lights property. As a party in privity with Chase, CRC is entitled to assert res judicata based on the judgment obtained by Chase.

Having concluded that CRC may assert res judicata based on the judgment in favor of Chase in the Northern Lights lawsuit, we next proceed to consider whether the trial court properly sustained the demurrer on the ground of res judicata as to both CRC and Chase based on the judgments in the Northern Lights lawsuit and the Encendido lawsuit.

D. *The Trial Court Properly Sustained the Demurrer Based on Res Judicata*

As we have explained, res judicata arises when a judgment is final, on the same claim or cause of action, between the same parties, and is adjudicated based on the merits. (*McKinney*, *supra*, 110 Cal.App.3d at p. 794.) Tabrizi claims that Chase and CRC did not establish the requirements for res judicata because the instant lawsuit does not assert the same causes of action as are asserted in the Northern Lights lawsuit and the Encendido lawsuit.[4]

---

[4] We note that much of Tabrizi's appellate brief addresses issues that are not pertinent to the trial court's ruling sustaining the demurrer on the basis of res judicata. Tabrizi sets forth an extensive, yet irrelevant, discussion about whether his complaint has substantive merit and whether he can amend the complaint to cure any deficiencies. We do not address these issues as they are not relevant to the issues presented in the demurrer.

12

For the purposes of res judicata, "[c]auses of action are considered the same if based on the same primary right." (*Citizens for Open Government v. City of Lodi* (2012) 205 Cal.App.4th 296, 325.)  " '[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered.' " (*Mycogen*, *supra*, 28 Cal.4th at p. 904.)  As our Supreme Court has explained, "for purposes of  applying the doctrine of res judicata, the phrase 'cause of action' has a . . . precise meaning:  The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced. . . .  '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. . . .'  Thus, under the primary rights theory, the determinative factor is the harm suffered."  (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798, citations omitted (*Boeken*).)  " 'The primary right must also be distinguished from the *remedy* sought:  "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." ' "  (*Mycogen*, at p. 904.)

Further, in assessing whether the same cause of action was at issue in a previous lawsuit, " '[i]f the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. . . .  The reason for this is manifest.  A party cannot by negligence or design withhold issues and litigate them in consecutive actions.' " (*Tensor Group v. City of Glendale* (1993) 14 Cal.App.4th 154, 160 (*Tensor Group*).)

Here, the Northern Lights lawsuit and the Encendido lawsuit both asserted the same cause of action as is asserted in this action. As we will explain, the primary right involved in both prior proceedings, as in this proceeding, was Tabrizi's " 'right to be free from' " the wrongful foreclosure of his property. (*Mycogen*, *supra*, 28 Cal.4th at p. 904.)

In the Northern Lights lawsuit, the gist of Tabrizi's case was that the foreclosure should not go forward because (1) there was fraud at the origination of the loan; and (2) Chase violated several legal statutory requirements relating to foreclosure. The injury Tabrizi alleged was the unlawful foreclosure on the Northern Lights property, which he sought to have enjoined. That is the same injury Tabrizi asserts in this case — that he is suffering an unlawful foreclosure. Tabrizi simply asserts different *theories* about why the foreclosure is unlawful. Tabrizi could have, but did not, focus on the specific legal theory that he now asserts when litigating the Northern Lights lawsuit. Indeed, as we have noted above, Tabrizi's complaint in the Northern Lights lawsuit *touched upon* the theory that he focuses on in this lawsuit, stating that Chase "claims that it is the current holder of the mortgage and/or other security interests taken in the . . . loan transaction, despite the fact that public records do not reflect any assignments from W[a]M[u] to [Chase] as required by law . . . ." Tabrizi simply chose not to further develop that theory in the Northern Lights lawsuit, although he easily could have done so.

In the Encendido lawsuit, Tabrizi also alleged that he was injured by an unlawful foreclosure. Specifically, he alleged that he was improperly subject to foreclosure on the Encendido property because Chase and CRC did not comply with the statutory requirements for foreclosure and had breached a promise to allow him to short-sale the

14

property.  Being subjected to an unlawful foreclosure of the Encendido property is the same injury Tabrizi alleges in this case.  In the Encendido lawsuit, Tabrizi could have focused on the allegations that he makes in this lawsuit as to why the foreclosure on the Encendido property is unlawful.[5]  Indeed, in the Encendido lawsuit, Tabrizi touched on the theory of his current lawsuit, alleging that Chase may not "have physical custody of Tabrizi's original Mortgage and therefore the foreclosure process is void," and that "[Chase] may have no rights in title or interest to Tabrizi's property."  As in the Encendido lawsuit, Tabrizi could have further developed that theory, but he simply chose not to.

Tabrizi acknowledges that he was attempting to prevent an unlawful foreclosure in all three lawsuits.  However, he argues that the same primary right is not at issue in this case because it is focused on *contractual theories* as to why the foreclosures are unlawful rather than statutory theories as alleged in the Northern Lights lawsuit and the Encendido lawsuit.  Tabrizi argues that "issues regarding whether Chase is a party to the note and deed of trust is a contractual issue while compliance with the statutory scheme governing

_____

5      Tabrizi asserts that "[t]he issue has to be decided in the prior action in order for Res Judicata to apply."  Based on this premise, he argues that even if his other theories of liability are barred, he may pursue a theory of fraud in this case because "whether or not Mr. Tabrizi actually was a victim of fraud was never decided."  Tabrizi's argument is flawed because it confuses the two types of res judicata.  Only *issue preclusion* requires that an issue be actually litigated and necessarily decided.  (*Lucido*, *supra*, 51 Cal.3d at p. 341.)  In contrast, claim preclusion — upon which the trial court relied to sustain the demurrer — requires only that " 'the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised' " even if it " 'was not in fact expressly pleaded or otherwise urged.' " (*Tensor Group*, *supra*, 14 Cal.App.4th at p. 160.)

non-judicial foreclosure sales raises issues with laws." We reject Tabrizi's argument.

Case law is clear that it is the harm suffered rather than the *legal theory* alleged that is

dispositive in determining whether lawsuits assert the same cause of action.[6] " 'Even

where there are multiple legal theories upon which recovery might be predicated, one

injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a

bar to a subsequent action by the plaintiff based on the same injury to the same right,

even though he presents a different *legal ground* for relief." ' " (*Boeken*, *supra*, 48

Cal.4th at p. 798.)

In sum, we conclude that the doctrine of res judicata is applicable to Tabrizi's

claims in this lawsuit. The demurrer was accordingly properly sustained as to Chase and

---

[6] Despite case law establishing that it is the harm suffered rather than the legal theory alleged that determines whether two lawsuits involve the same primary right, Tabrizi relies on *Branson v. Sun-Diamond Growers* (1994) 24 Cal.App.4th 327 to argue that his lawsuit is not barred by res judicata because it is purportedly based on contractual theories while the former lawsuits were purportedly based on statutory theories. We reject the argument because *Branson* is not applicable here and does not abrogate the rule that the harm suffered rather than the legal theory asserted determines whether res judicata applies. *Branson* concerned a unique situation in which a defendant to a first lawsuit filed a posttrial motion seeking a court order requiring that a defendant, who he alleged to be his corporate principal, indemnify him under Corporations Code section 317. (*Id*. at pp. 332-338.) Applying the doctrine of issue preclusion, *Branson* concluded that a ruling adverse to the defendant on his posttrial motion did not bar a subsequent lawsuit by the defendant alleging breach of contract for indemnity against the principal, as different primary rights were at issue. (*Id*. at pp. 343-344.) Specifically, the defendant's posttrial motion concerned his primary right to seek statutory indemnity, while his subsequent lawsuit concerned his primary right to seek contractual indemnity. (*Ibid*.) Here, in contrast, as we have explained, there is only a single primary right asserted, namely the right of Tabrizi to be free from an unlawful foreclosure. *Branson* does not stand for the principle claimed by Tabrizi, that a party may bring one lawsuit alleging statutory theories of liability and then bring a *second* lawsuit alleging contractual theories of liability when, as here, the primary right asserted in the lawsuits is the same.

16

CRC on the ground that Tabrizi's claims against those parties are barred by the judgments in the Northern Lights lawsuit and the Encendido lawsuit.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

AARON, J.