Filed 10/23/15  Reile v. Live Stores, Inc. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| WOLFGANG REILE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LIVE STORES, INC. et al.,<br><br>    Defendants and Respondents. | D066758<br><br><br>(Super. Ct. Nos.<br>  37-2011-00097722-CU-BC-CTL<br>  37-2013-00072527-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Sandler, Lasry, Laube, Byer & Valdez and Thomas R. Laube for Plaintiff and Appellant.

The Law Office of Geoffrey C. Chackel and Geoffrey C. Chackel; Duckor Spradling Metzger & Wynne and Robert M. Shaughnessy for Live Stores, Inc., Mega Super Stores, Inc., and Christopher Williams, Defendants and Respondents.

Appellant Wolfgang Reile appeals from a judgment of dismissal in favor of Live Stores, Inc. (Live Stores) entered after the trial court sustained without leave to amend demurrers as to Reile's causes of action for foreclosure of security interest and breach of promissory note and conversion alleged in his first amended complaint.[1] Reile contends (1) the trial court erred by finding that res judicata barred his causes of action; (2) the doctrine of judicial estoppel was not applicable here; (3) the court erroneously ruled Live Stores defaulted under the promissory note or settlement agreement by entering into a licensing agreement with a third party as a separate ground for sustaining the demurrer; and (4) the court erroneously failed to grant him leave to amend his operative complaint. Concluding the court did not err by applying res judicata and, further, judicial estoppel barred Reile's causes of action for foreclosure of security, interest and breach of promissory note and conversion asserted in the second lawsuit, we affirm the judgment.

[1] The court overruled Live Stores' demurrer as to Reile's causes of action for fraudulent conveyance and constructive trust. Reile purported to appeal from the court's order on the demurrer but this court informed him he was required to take an appeal from the ensuing judgment of dismissal, and that under the one final judgment rule, he would have to dismiss any remaining cause of action with prejudice. Subsequently, Reile requested the trial court dismiss the remaining two causes of action as to Live Stores, which the court did. In December 2014, the trial court entered judgment of dismissal as to Live Stores. We then allowed this appeal to proceed.

FACTUAL AND PROCEDURAL BACKGROUND

*Live Stores I*

Live Stores was an e-commerce business that Reile formed in 2007.[2] "When Live Stores was in business, its principal products were heating and cooling systems (such as refrigerators). It would advertise online using various websites hosted on their owned [*sic*] domain names to attract customers. If a customer made an online purchase Live Stores would have the product shipped directly from the manufacturer once the customer paid through one of the online methods of paying." Reile claims he sold some of his shares in Live Stores, and the new majority owners installed Jan Platovsky as its chief executive officer. In September 2011, Reile sued Platovsky and Live Stores in San Diego Superior Court. That case settled in September 2012, with Live Stores executing a promissory note.[3] (*Reile, et al. v. Platovsky, et al.,* (Super. Ct. S.D. County, 2012, No. 37-2011-00097722-CU-BC-CTL) (*Live Stores I*).)

The trial court, in ruling on the present demurrer, summarized the settlement agreement's terms: "*Lives Stores I* settled for $182,500. The settlement agreement

---

[2]    The pleadings in *Live Stores I* are not included in the appellate record. We take some of the background facts from Reile's March 2014 declaration submitted in support of his ex parte application in the trial court.

[3]    The promissory note provides: "If a default exists for any reason other than the failure of [Live Stores] to make a payment when due, and such default shall continue for a period of ten (10) calendar days, then payee [Reile] may, at his option declare the whole sum then remaining unpaid immediately due and payable. In order to exercise his option to accelerate for default hereunder, [Reile] shall provide written notice to [Live Stores] at the address listed for notices hereunder and provide [Live Stores] five calendar days from the date of delivery of said notice to cure the default by paying all sums then due and owing to [Reile], including a late fee of $50.00."

3

provided:  Defendants (Platovsky and Live Stores) agreed to pay plaintiffs $100,000 by wire transfer upon execution of the agreement and signed request for dismissal.  Live Stores also agreed to execute a promissory note for $82,500, at 6 [percent interest] beginning September 1, 2012.  Monthly payments on the note in the amount of $2,000 [per] month were to be paid beginning June 1, 2013.  As of June 1, 2014, the monthly payments would increase to $3,496.16 [per] month, with payments continuing for the next 19 months.  Live Store[s] pledged as security the following websites:  'www.cooler-store.com, www.heater-store.com, and www.coolerdirect.com, including all electronic and database files used on the websites and each domain name.'  The parties also agreed to transfer to each other ownership interests in the companies they co-owned, so that all shares in Live Stores owned by plaintiffs were transferred to Live Stores.  [¶]  Defendant Live Stores failed to make the installment payments when due."

The trial court explained subsequent developments in the case.  "On June 11, 2013, [Reile] wrote to [Live Stores]:  'Live Stores, Inc. is in default of the promissory note dated September 1, 2012, in the principal sum amount of $82,500 for failure to make the monthly payment due on June 1, 2013.  [¶]  Pursuant to paragraph 2 of the note, in the event Life [*sic*] Stores, Inc. does not cure the default within 5 calendar days of the date of delivery of this notice, [plaintiff] will exercise all of his options under the note.' "

*Live Stores II*

In October 2013, Reile again sued Live Stores.  He asserted causes of action for foreclosure of security interest (Cal. U. Com. Code, § 9601) and breach of the September 1, 2012 promissory note.  (*Reile v. Live Stores, Inc., et al.* (Super. Ct. S.D. County, 2014,

4

No. 37-2013-00072527-CU-BC-CTL (*Live Stores II*).)  The complaint alleged that under the promissory note, "Reile is the present owner and holder of the [promissory note] and security interest.  The [promissory] note lists three websites as collateral."  Regarding the foreclosure cause of action, the complaint alleged that despite Reile's sending Live Stores a notice of default, Live Stores had failed to pay its installments under the note; therefore, Reile alleged he had "a lien on the Collateral for the sum of $82,500, with interest from June 1, 2013[,] at the rate of six percent (6%) per annum, plus late fees, and all costs and expenses, including attorney's fees, in connection with the enforcement of the [promissory note]."  Reile sought immediate possession and ownership of the collateral.  Reile further sought "the appointment of a receiver, that the proceeds of such a sale be applied in payment of the amounts due [him] and secured by the [c]ollateral, and that [Live Stores] be barred and foreclosed from all rights, claims, interests of equity of redemption in the collateral."  Reile asserted as to the breach of promissory note cause of action that he "suffered actual damages, and continues to suffer damages, totaling approximately $82,500, as of June 11, 2012, plus interest, late fees, costs, and attorneys' fees, and such other amounts as may be proven at trial."[4]

---

4    The September 1, 2012 promissory note was attached and incorporated into the complaint by reference, and stated that Live Stores promised to pay Reile $82,500 plus interest in installments by January 1, 2016.  The promissory note's default provision states three ways a default could occur:  "(1) failure of [Live Stores] to perform any agreement hereunder or pay any obligation secured hereby when due; or (2) an application for appointment of a receiver for, making of a general assignment for the benefit of creditors by, or [(3)] insolvency of [Live Stores]."  The provision continues: "If a default exists for any reason other than the failure of [Live Stores] to make a payment when due, and such default shall continue for a period of ten (10) calendar days,

5

In March 2014, Reile moved the trial court for a temporary restraining order, seeking "an order to show cause for appointment of a limited purposes receiver. The receiver would take over and control the [three] domain names which are pledged to [Reile]."

In March 2014, Reile filed a first amended complaint against Live Stores, stating its corporate privileges had been suspended by the California Secretary of State. Reile added as defendants Mega Super Stores, Inc., which assertedly took over Live Stores' assets after Live Stores went out of business, and Christopher Williams, who allegedly had acquired a controlling interest in Live Stores and later had "virtually sole and complete control over the operations and assets of Mega Super Stores since its formation in August 2013." Reile asserted causes of action against all defendants for foreclosure of security interest in personal property; breach of promissory note; fraudulent conveyance; conversion and involuntary trust; and, a cause of action for successor entity liability against Mega Super Stores alone.

Reile alleged in the first amended complaint: "The [promissory note] provided that [Reile] would have a security interest in the collateral until payment of the full

---

then [Reile] may, at his option, declare the whole sum then remaining unpaid immediately due and payable. In order to exercise his option to accelerate for default hereunder, [Reile] shall provide written notice of default to [Live Stores] . . . and provide [Live Stores] five calendar days from the date of delivery of said notice to cure the default by paying all sums then due and owing to [Reile], including a late fee of $50.00. [¶] In the event of a default, [Reile] shall have all remedies available in law or equity. Under no circumstances shall the failure of [Reile] to enforce the terms of this [promissory note] be construed as a waiver of the terms or otherwise operate to restrict [his] ability to enforce the terms of this [promissory note] in any way."

6

amount due on the note, together with interest and other fees described in the note, or any judgment for such amounts. . . . failure of [Live Stores] to pay any of the installments or to commit any of the acts of default described in the note, the whole amount of the debt specified in the note would become immediately due and payable."[5] (Some capitalization omitted.)

*Reile's Ex Parte Application in Live Stores I*

In April 2014, Reile applied ex parte to enforce the settlement agreement in *Live Stores I* and appoint a receiver. Reile asserted that Live Stores had defaulted on the monthly payments, having paid nothing on the promissory note. Reile asserted that as of April 1, 2014, the principal sum of $22,000 was due. He sought to enforce the settlement agreement under Code of Civil Procedure section 664.6 and requested judgment against Live Stores in the amount of $22,000 plus $1,004 in interest. Reile relied on the settlement agreement's provision stating "[Reile] may move to set aside dismissal and have judgment entered for the amount then due and owing under the promissory note including payment of the principal, interest and attorneys' fees and costs of collection less any amounts that were paid before the default." (Some capitalization omitted.)

---

[5] Williams cross-complained against Reile and other defendants, asserting causes of action for fraud-intentional misrepresentation; fraud-concealment; breach of contract, breach of the covenant of good faith and fair dealing; negligent infliction of emotional distress, promissory estoppel, breach of fiduciary duty, and indemnity. Williams and Mega Stores request we dismiss the appeal as to them because the judgment does not finally dispose of any cause of action as between Reile and them. Reile asserts he did not file an appeal against any party other than Live Stores. We agree Williams and Mega Stores, Inc. are not parties to this appeal and therefore their motion to dismiss is moot.

7

On April 16, 2014, the trial court granted Reile's ex parte application and entered judgment in Reile's favor for $22,000, which included the first eleven monthly installment payments (from June 2013 to April 2004 inclusive) which were due, plus $1,004 in interest.

*Defendants' Demurrers to Reile's First Amended Complaint*

In May 2014, Live Stores demurred to each cause of action in the first amended complaint on grounds they were barred by the doctrine of res judicata and merger. Williams and Mega Super Stores separately demurred to Reile's first amended complaint.

Reile opposed the demurrer, arguing that in the first amended complaint he had sought "to vindicate separate and distinct primary rights based on defendants' continuous and recurring breach under the note since entry of judgment. Contrary to defendants' claims, [his] right to the full amount of the note ($82,500) did not accrue on June 11, 2013[,] and was not '*extinguished*' by entering judgment on April 16, 2014[,] against Live Stores." (Some capitalization omitted.) Reile also pointed out that under the promissory note's terms, he was entitled to enforce the note in any way he chose. The Note specifically states: "In the event of a default, [Reile] shall have all remedies available in law or equity. Under no circumstances shall the failure of [Reile] to enforce the terms of this note be construed as a waiver of the terms or otherwise operate to restrict [Reile's] ability to enforce the terms of this note in any way." (Some capitalization omitted.) Reile made a cursory request for leave to amend if the court "concludes there are grounds to sustain the demurrer."

8

In their joint reply, defendants reiterated their argument that a demurrer was proper on res judicata grounds because Reile had elected to accelerate the entire $82,500 unpaid balance and had asserted that claim in his original and first amended complaints. Defendants argued that "whether or not [Reile] now claims he was entitled to accelerate is entirely irrelevant—he did elect to accelerate on multiple occasions and had accelerated at the time he entered judgment on April 16, 2014." Defendants asserted that every cause of action was predicated upon the existence of a promissory note that had been extinguished through the entry of judgment in *Live Stores I*.

Defendants also argued that judicial estoppel barred Reile's first amended complaint because Reile "*elected to accelerate the entire unpaid balance of $82,500 upon a single event of default*." Defendants further argued: "[Reile] completely ignores the legal effect of his June 11, 2013[ ] election to accelerate the entire $82,500 unpaid balance and ignores his affirmative allegations in the complaint and first amended complaint that 'Reile hereby exercises his right to accelerate and demand payment in full of the total amount due under the note.' . . . This allegation was first made on October 22, 2013, and again on March 27, 2014—three weeks before judgment was entered. [Reile] cannot blow hot and cold on this issue." (Italics and some capitalization omitted.) Finally, defendants argued: "The impact of this election was significant and prejudicial to defendant because it deprived defendant of the right to cure by making a single 'catch-up' payment of $2,000 and replaced that payment obligation with the entire $82,500 balance. The resulting domino effect of this election resulted in this lawsuit and the entry of judgment. For [Reile] to now quietly suggest they [*sic*] did not accelerate is factually

9

untrue, contradicts his own allegations and should be rejected as a misuse of judicial process." (Some capitalization omitted.)

In August 2014, the court sustained the defendants' demurrer without leave to amend as to the causes of action for foreclosure of security interest and breach of promissory note and conversion. The court concluded res judicata applied: "At the time the judgment was entered [in *Live Stores I*, Reile] had asserted in *Live Stores II* that Live Stores had failed to make any payments under the promissory note and ha[d] transferred all rights to the domain names to another entity. Both these events constitute a breach under the promissory note. Transferring the rights to the domain names would constitute a default for a reason other than the failure to make a payment when due. [¶] Accordingly, at the time [Reile] sought to enforce the settlement agreement and enter judgment, [his] right to accelerate payment under the promissory note had accrued. The right could have, and should have, been asserted." (Some capitalization omitted.)

DISCUSSION

I.

A. *Reile's Contention*

The gravamen of Reile's contention on appeal is that his settlement agreement with Live Stores was an installment contract lacking an acceleration clause. He maintains that when Lives Store defaulted, he was entitled to recover only those monthly installments that had come due at the time of the lower court proceedings. He argues res judicata does not bar him from exercising his separate right to recover future installments from Live Stores as they come due.

10

Acknowledging he had previously asserted in pleadings his right to recover all monies owed from Live Stores, Reile contends his "unverified allegation in the first amended complaint that the [promissory note] permitted acceleration did not override the terms of the [promissory note]," and his "erroneous allegation that the [promissory note] permitted acceleration due to a monetary default does not change or expand his rights under the [promissory note]."

B. *Standard of Review*

We review a ruling on a demurrer independently. We give the pleading a reasonable interpretation, reading it as a whole and its parts in their context, to determine whether sufficient facts are stated to constitute a cause of action or a right to the relief requested. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We accept as true all facts properly pleaded, evidentiary facts found in exhibits attached to the complaint, and facts that may be implied or inferred from those expressly alleged. (*Morillon v. Royal Packing Co.* (2000) 22 Cal.4th 575, 579.) In addition to the facts actually pleaded, we also may consider facts judicially noticed. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.) If a demurrer was sustained without leave to amend, but the defect was curable by amendment, we would find an abuse of discretion in that ruling. However, if the order is correct as a matter of law, we would not reverse it. (*Ibid.*) We examine the legal sufficiency of the judgment, not necessarily the reasoning of the trial court. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 19; *Otay Land Co. v. Royal Indemnity Co.* (2008) 169 Cal.App.4th 556, 561-562.)

11

C. *Res judicata Principles*

The California Supreme Court explains: " 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' [Citation.] Under the doctrine of res judicata, if a plaintiff prevails in an action, the cause is merged into the judgment and may not be asserted in a subsequent lawsuit; a judgment for the defendant serves as a bar to further litigation of the same cause of action." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896-897, fn. omitted.)

" 'Two proceedings are on the same cause of action if they are based on the same "primary right." [Citation.] The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and the defendant's wrongful act in breach of that duty. [Citation.] [¶] An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose.' " (*Silverado Modjeska Recreation & Park District v. County of Orange* (2011) 197 Cal.App.4th 282, 297-298.) "Thus, a single cause of action is based on the harm suffered, rather than on the particular legal theory asserted or relief sought by the plaintiff." (*Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 991; see also *Boblitt v. Boblitt* (2010) 190 Cal.App.4th 603, 610;

12

*Friedman Prof. Management Co., Inc. v. Norcal Mutual Ins. Co.* (2004) 120 Cal.App.4th 17, 28 ["core concept" of the primary rights doctrine is the harm suffered].)

Similarly, a cause of action is independent of the remedy and relief sought; seeking more than one type of relief in connection with a single injury does not create more than one cause of action. (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 860; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 682.) Further, the parties are not required to have actually litigated an issue in the prior lawsuit for it to be precluded, as res judicata also bars issues that *could have been* litigated, as long as the later-raised issues constitute the same cause of action involved in the prior proceeding. (*Federation of Hillside and Canyon Associations v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202; *Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1245.)

"A clear and predictable res judicata doctrine promotes judicial economy. Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' [Citation.] A predictable doctrine of res judicata benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.' " (*Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at p. 897, italics omitted.)

13

D. *Analysis*

Here, the court did not err by sustaining the demurrer to the causes of action for foreclosure of security interest and breach of promissory note on res judicata grounds. The parties in *Live Stores I* and *Live Stores II* were the same. The primary right at issue in both lawsuits was the same: Reile's right to recover a debt owed by Live Stores following its default. In *Live Stores I*, Reile reached a settlement agreement on that issue, and subsequently the court granted his ex parte application in which he sought 11 months of payment owed, despite his having claimed in *Live Stores I* a right to the entire debt owed. Reile, having raised the claim for the larger amount owed, was barred by res judicata from relitigating this same issue in the second lawsuit. As the court stated in *Mycogen Corp. v. Monsanto Co., supra,* 28 Cal.4th at page 905, "It is well established that a judgment in an action for breach of contract bars a subsequent action for additional relief based on the same breach."

For res judicata purposes, we need not resolve which of Reile's two arguments for the amount of the monies owed is meritorious. That was an issue to be resolved in the trial court where Reile made his election of remedies. Likewise, on appeal Reile's argument that the settlement agreement was an installment contract and therefore he could not have collected on installments that had not come due when he filed his ex parte application is unavailing. Under res judicata, " '[i]f the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it . . . . The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions.

14

Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable.' " (*Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 402, quoting *Sutphin v. Speik* (1940) 15 Cal.2d 195, 202.)

E.  *Motion for Leave to Amend*

We reject Reile's contention the trial court should have granted him leave to amend his complaint to remove his inaccurate pleadings regarding his right to acceleration of the payments from Live Stores.  Reile has the burden to show in what manner the pleadings may be amended and how such amendments will change the pleadings' legal effect.  (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.)  This showing may be made for the first time on appeal. (Code Civ. Proc., § 472c, subd. (a);[6] *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

Here, Reile's proposed amendment is unavailing.  Even if he were permitted to strike the allegations from his complaint regarding the claim for the total amount of monies owed, he would still be left with the judicially noticed notice of default, which states he was entitled to all the monies that Live Stores owed following its default.

---

6      Code of Civil Procedure section 472c, subdivision (a) states:  "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made."

" ' "Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact that is relevant to an issue in the action without requiring formal proof of the matter." ' " (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117.) When ruling on a demurrer, "[a] court may take judicial notice of something that cannot reasonably be controverted, even if it negates an express allegation of the pleading." (*Ibid*.) Accordingly, the trial court did not abuse its discretion in denying Reile leave to amend his first amended complaint.

## II.

### *Judicial Estoppel Also Bars Reile's Claim*

A separate ground for affirming the trial court's ruling is that Reile's claim in *Live Stores II* is barred by judicial estoppel. Defendants raised the issue in their demurrer reply papers below, and Reile addresses it in his opening brief.

" ' " ' "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary." ' [Citation.] The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are

16

totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' " ' " (*AP-Colton LLC v. Ohaeri* (2015) 240 Cal.App.4th 500, 507.)

Judicial estoppel " 'obviously contemplates something other than the permissible practice . . . of simultaneously advancing in the same action inconsistent claims or defenses which can then, under appropriate judicial control, be evaluated as such by the same tribunal, thus allowing an internally consistent final decision to be reached.' [Citations.] Consequently, judicial estoppel is especially appropriate where a party has taken inconsistent positions in separate proceedings." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.)

All of the requirements of judicial estoppel are satisfied here. In the trial court, Reile first claimed in pleadings that Live Stores owed him the entire amount of the debt under the settlement agreement. But in his later ex parte application, Reile sought only eleven months of payments plus interest. He was successful in advocating this latter position because the court granted his application and judgment was entered accordingly. Reile's renewed claim for the remaining months' payments from Live Stores is untenable. On appeal, Reile asserts without more that the last requirement of judicial estoppel was not met here, claiming "it was a mistake to allege the [promissory note] permitted acceleration for nonpayment of an installment when it did not," and explaining that "[f]ortunately however [he] had attached the [promissory note] to the complaint so a careful reading would show the error." But we are not bound to accept this assertion, which we find unpersuasive and self-serving in light of the whole record.

17

Reile also claims Live Stores was not prejudiced by his inaccurate allegation. But that claim is of no moment because " '[t]he doctrine of judicial estoppel is designed to protect the integrity of the legal system as a whole, and does not require a showing of detrimental reliance by a party.' " (*AP-Colton v. Ohaeri, supra,* 240 Cal.App.4th at p. 508.)

Because we affirm the court's ruling on the above stated grounds, we need not address Reile's contention that Live Stores did not default by entering into a licensing agreement with a third party.

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.


                                                                    O'ROURKE, J.

WE CONCUR:


McINTYRE, Acting P. J.


AARON, J.