Filed 3/1/24  Bhakta v. Bhakta CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| AJESH S. BHAKTA et al., |  |
| Plaintiffs and Appellants, | E079359 |
| v. | (Super.Ct.No. MCC1600827) |
| DHARMENDRA M. BHAKTA et al., | OPINION |
| Defendants and Appellants. |  |

APPEAL from the Superior Court of Riverside County.  Raquel Marquez, Judge.

Judgment vacated and remanded with directions.

Lanza & Smith, Anthony Lanza and Brodie H. Smith, for Plaintiffs and

Appellants, Ajesh S. Bhakta et al.

Shulman Bastian Friedman & Bui, and Shane M. Biornstad for Defendants and

Appellants, Dharmendra M. Bhakta et al.

1

This appeal concerns a business dispute between extended family members that gave rise to both this action and two subsequent federal lawsuits. Before the federal lawsuits were even filed, the parties in this action entered a settlement agreement. The trial court ordered the matter dismissed with prejudice but did not enter judgment and instead retained jurisdiction under Code of Civil Procedure section 664.6. (Unlabeled statutory references are to the Code of Civil Procedure.) Plaintiffs moved years later under section 664.6 to invalidate the settlement. The trial court denied the motion. Plaintiffs appeal from the subsequently entered judgment, arguing that the court should have granted the earlier motion to invalidate because the settlement was an unenforceable agreement to agree. We agree with plaintiffs' assessment and accordingly vacate the judgment that was entered on the settlement.

Defendants cross-appeal, arguing that the judgment should be modified to reflect an unqualified victory for the defense and then affirmed as modified, for reasons independent of the settlement. Defendants argue that the trial court erred by denying two motions—one filed before the settlement and one after—in which defendants sought to have judgment entered in their favor on the basis of res judicata. We reject defendants' arguments and accordingly remand to the trial court for further proceedings.

BACKGROUND

A. *The Present Action*

In September 2016, Ajesh, Savita, Arjun, and Parul Bhakta (collectively, plaintiffs) filed a lawsuit against Jayashree Krishna, Inc. (JSK) and Dharmendra, Anjali,

2

Minesh, Mukundbhai, and Sudhaben Bhakta (collectively, defendants). The following facts are taken from the complaint.

JSK was incorporated in 2005. Plaintiffs collectively invested one million dollars in the company in exchange for a 50 percent shareholder interest. JSK's remaining 50 percent shareholder interest belonged to defendants Mukundbhai and Sudhaben, who also had invested one million dollars in the company.[1]

JSK's purpose was to purchase and operate a particular motel in San Bernardino, California. JSK purchased the motel in 2006. Defendants handled the day-to-day operations of the motel without any assistance from plaintiffs. In addition to operating the motel, defendants controlled JSK. In 2012, defendants asked plaintiffs to invest additional capital into JSK, but plaintiffs refused.

Plaintiffs were never given a shareholder agreement or provided notice of any meetings of the shareholders or the board of directors. Plaintiffs never received any compensation, dividends, or distributions from JSK.

In September 2015, defendant Anjali informed plaintiffs that they "were no longer shareholders in the Company and that they had no interest in the Company." In April 2016, plaintiffs demanded in writing that JSK make available for inspection and copying JSK's accounting books and records along with the minutes of meetings of the shareholders and the board of directors. Defendants refused to comply.

---

[1]     Because all of the individual parties have the same last name, we refer to them individually by their first names. No disrespect is intended.

3

In the complaint, plaintiffs alleged that defendants were "engaged in an active campaign to capture and usurp control and the financial gains of the Company, to the exclusion and detriment of Plaintiffs through a series of wrongful actions in violation of their fiduciary duties owed to Plaintiffs." Against the individual defendants, plaintiffs alleged causes of action for breach of fiduciary duties and fraud by concealment and nondisclosure. Plaintiffs alleged that defendants had committed fraud and breached their fiduciary duties by diluting and then eliminating plaintiffs' 50 percent interest in JSK while concealing that information from plaintiffs. Plaintiffs also alleged that defendants failed to disclose that defendants received loan forgiveness from the United States Small Business Administration (SBA) in an amount over $1.5 million dollars "in connection with certain loans encumbering the motel and the Company's assets."

In addition, in a cause of action naming both JSK and the individual defendants, plaintiffs demanded to inspect JSK's corporate records under Corporations Code sections 1600 and 1601. Plaintiffs also sought involuntary dissolution of JSK under Corporations Code section 1800 et seq. In support of the involuntary dissolution claim, plaintiffs alleged that defendants had "been guilty of or knowingly countenanced persistent and pervasive fraud, mismanagement or abuse of their authority or persistent unfairness toward Plaintiffs or misapplied and/or wasted the Company's property." Plaintiffs also alleged that the requested relief was supported by "the allegations set forth in th[e] Complaint, [and] any and all pleadings filed in connection therewith."

4

In December 2017, plaintiffs requested dismissal with prejudice of the involuntary dissolution cause of action (the fourth cause of action). The clerk entered dismissal as requested "as to [the] Fourth Cause of Action only."

B. *Defendants Move for Judgment on the Pleadings*

In February 2018, defendants JSK, Dharmendra, Minesh, and Anjali (but not defendant Mukundbhai) moved for judgment on the pleadings. The moving defendants argued that plaintiffs' dismissal with prejudice of the involuntary dissolution cause of action required the court to enter judgment in favor of defendants on the remaining causes of action because the dismissal of the involuntary dissolution claim adjudicated on the merits the same primary rights at issue in the other causes of action.

The court granted the motion in part, but not on the basis of res judicata, and otherwise denied it.[2] The court granted the motion with respect to the claim for inspection of JSK's records on the ground that the claim was not viable against the individual defendants. The court denied the motion in all other respects, reasoning that dismissal with prejudice of the involuntary dissolution cause of action did not bar the breach of fiduciary duty and fraud causes of action because "the same primary right is not involved, so neither the issue preclusion nor claim preclusion aspects of res judicata apply. The primary right for the remaining causes of action is the right to be free from interference with property rights in the corporation, while in the fourth cause of action for

---

[2] The motion was heard on April 2018, but the record on appeal does not contain a transcript of the hearing.

involuntary dissolution the primary right is the right to a dissolution of the corporation under the statutory procedure."

C. *The Settlement*

In April 2018, the parties attended a mandatory settlement conference and reached an agreement at the end of the second day of negotiations. The court asked counsel to put the terms of the settlement on the record.

Counsel for defendants Mukundbhai and Sudhaben stated that the parties had reached the following agreement: The parties "agreed that the loan made by Mukundbhai and Sudhaben Bhakta to the company shall have a principal balance of $1,990,435. From that will be deducted any attorney fees paid by the corporation or through the corporation in this particular litigation. This amount is subject to verification of the infusions of loans advanced by Mukundbhai and Sudhaben Bhakta and any other defendants in the case.

"The second point is the parties agree to retain an independent appraiser to value the property, that being the hotel which is the subject matter of this dispute. [¶] The property will be listed for sale based on the appraised value at a price determined by mutual agreement of the parties. If the party is sold—I'm sorry—if the property is sold to a third party, then the loans to the U.S. Bank and Balboa Finance will be paid first, and then the loan described above, with respect to Mukundbhai and Sudhaben Bhakta will be paid with interest as follows. [¶] For those advances made by the Bhaktas prior to 2008, their interest rate will be five percent simple interest from the date of such advance. For any advance from January 1, 2008, onward, it will be six percent, again, simple interest, payable only from the date that the actual advance was made. [¶] After the payments of

6

the third-party loans and the loans to Mukundbhai and Sudhaben Bhakta, then the remaining proceeds of the sale will be split 49 percent to the plaintiffs and 51 percent to the defendants, and in particular that would be Dharmendra, Minesh, and Anjali Bhakta. [¶] If the property, however, is sold to the defendants, and they shall have the right to purchase it by agreement, then the payout to the plaintiffs will be over a period of approximately two to five years, with a view towards tax-favorable treatment towards the plaintiff with regard to such sale. Also, it shall be structured in a way that is sustainable by the cash flow of the company.

"The case will be dismissed without prejudice. The Court will retain jurisdiction pursuant to [Code of Civil Procedure section] 664.6 to review and enforce all aspects of the settlement.

"The parties will and hereby do mutually release each other, and also agree to [Civil Code section] 1542 waivers from each side. The parties will cooperate with regard to any further documents that are required to effectuate the terms that I've described above. [¶] Subject to counsel's verification, those are the terms that I understand the parties have agreed to."

Counsel immediately added the following "additional" term: The parties "stipulated and agreed that nothing in the settlement agreement shall operate to create a right to be recognized on the part of the plaintiffs as a shareholder in the company."

The court added: "And then, finally, if there's any agreement, there's an agreement about the purchase price, the sale price, there is some ambiguity about what is going to be validated or not validated in terms of the money owed to the defendants who

7

made the loan, all of that will be determined by the Court if there's—if you're not able to reach an agreement. The Court will exercise its jurisdiction on any issue to which they cannot make an agreement on. The Court will listen to both sides and make the order and make the determination."

Plaintiffs' counsel then offered the following "minor clarification": "I heard the words, 'They shall have the right to purchase it by agreement.' That was when counsel was talking about the right of defendants to purchase the property by agreement. It's not that we have agreed. It's that in the event that we agree, then they shall have a right to purchase it. It's somewhat of an illusory term. But I think the point is that we'll get together, and if they want to buy it, then we'll agree to it. Correct?" Counsel for defendants Mukundbhai and Sudhaben responded: "That's correct. And the parties intend to negotiate amongst themselves for a buyout if it can be done. If not, the property will be sold to a third party."

The parties all said that they understood and agreed to the terms of the settlement agreement as stated in the record. (Defendant Dharmendra agreed on behalf of defendant Anjali.[3]) JSK's counsel indicated "that the corporation is going along" and remarked:

---

[3]    Before defense counsel put the terms of the agreement on the record, the court learned that all of the parties were present except for defendant Anjali, who was in a meeting. Her counsel asked if defendant Dharmendra (Anjali's husband) could agree on her behalf. Dharmendra said that he had authority to agree on Anjali's behalf. Plaintiffs' counsel stipulated that would be fine. The court stated: "Then if it's stipulated by the parties that you have authority as her husband, then I will permit it. The parties are going to give up any appellate rights or any other rights to withdraw because of the fact that she's not present."

8

"As I understand it, your honor, this is in regards to the sale of the hotel solely.  It has nothing to do with the corporation or the company."

After the parties assented to the terms, the court stated:  "It's usually just dismissed and it's dismissed with prejudice, not without prejudice."  Counsel for defendants Mukundbhai and Sudhaben responded:  "I misspoke, your Honor.  I understand that the Court already retains jurisdiction.  . . . [¶] . . . The case will be dismissed with prejudice but the Court will retain jurisdiction."  No other counsel commented.

The court then stated:  "The matter is now settled.  It is dismissed.  The Court will retain jurisdiction."  The minute order from the hearing reads:  "Entire Action Dismissed with prejudice.  The court will retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement (CCP 664.6)."

D. *The Parties' Initial Appeals*

At a hearing in June 2018, the court asked the parties about the status of the settlement.  We know nothing else about the purpose of the hearing, because the record on appeal does not contain a transcript.  The court continued the hearing until September and set a briefing deadline.

Days before that scheduled hearing, plaintiffs appealed from the April 2018 order dismissing the case with prejudice as a result of the parties' settlement agreement.  Defendants cross-appealed from the order denying the motion for judgment on the pleadings.  We dismissed both appeals without prejudice on the ground that they were premature because judgment had not been entered.

9

According to the superior court docket, the September 2018 hearing was held as scheduled.  The transcript from that hearing is not included in the record on appeal.  The findings from that proceeding were as follows:  "Court will await further litigation from Counsel.  [¶] Counsel may file a motion for the Court to exercise its jurisdiction pursuant to CCP 664.6."

E.  *The First Federal Action*

In April 2020, plaintiffs filed a complaint in federal court.  Plaintiffs named the same defendants as in the present action and added the SBA.  Plaintiffs alleged that defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(a)-(d) and alleged that defendants and the SBA violated plaintiffs' civil rights under the First, Fourth, Fifth, and Fourteenth Amendments of the federal Constitution.  The federal suit arose from the same basic operative facts as the underlying state court action, namely, plaintiffs' loan to JSK when the company formed, JSK's purchase of the motel, and plaintiffs' discovery in 2015 that they no longer had a shareholder interest in JSK.

In June 2020, plaintiffs voluntarily dismissed the federal action without prejudice by notice under Federal Rules of Civil Procedure, rule 41(a)(1)(A)(i).  (Undesignated citations to rules are to the Federal Rules of Civil Procedure.)

F.  *Plaintiffs Move to Invalidate the Settlement Agreement*

In October 2020, plaintiffs moved to invalidate the "purported" settlement agreement under sections 128, 187, 473, 664.6, and 1060.  Plaintiffs argued that the settlement agreement was invalid because it amounted to an unenforceable agreement to

10

agree and lacked essential terms, including a sale price for the motel and a definite amount owed to defendants Mukundbhai and Sudhaben on their loan to JSK, given that the loan amount was subject to verification.

The trial court held a hearing on the motion in November 2020.  The court had issued a tentative ruling indicating that it was denying the motion for the following reason:  "Plaintiffs provide no authority that makes the dismissal void or gives the Court authority to set aside the settlement agreement."  At the hearing, plaintiffs' counsel argued that the court should reconsider the tentative ruling or, in the alternative, that the court should enter judgment on the settlement.  Counsel argued that finality was needed because otherwise plaintiffs were "stuck in a procedural limbo."  The court rejected plaintiffs' request to enter judgment.  The court reasoned that it had "made clear that the case was dismissed with prejudice, and the Court retained jurisdiction to enforce the terms of the settlement.  And I'll leave it to the parties on that."  The court otherwise denied the motion and indicated that it was "leav[ing] it to the parties to move forward."

G. *The Second Federal Action*

In July 2020 (after plaintiffs filed the motion to invalidate but before the hearing), plaintiffs Ajesh, Arjun, and Parul (collectively, the federal plaintiffs) filed another action in federal court against the same defendants as named in the present action and arising from the same operative facts as this action and the first federal action  The federal plaintiffs alleged causes of action for RICO violations, breach of contract, fraud, breach of fiduciary duty, unfair competition under Business and Professions Code section 17200 et seq., unjust enrichment, and fraudulent conveyance.

11

In October 2020, the parties jointly stipulated to stay the second federal action because of the pending motion to invalidate the settlement in this action. The parties agreed that the ruling on that motion might eliminate the need for the second federal action because the allegations in the second federal action "alleg[ed] largely the same or similar claims which according to Plaintiffs were not resolved in the State Court case, and some new claims purportedly arising from the alleged State Court 'settlement' (Defendants position is that all matters between the Parties was resolved in the State Court Action)." The federal district court did not accept the stipulation.

In January 2021, the federal plaintiffs filed a first amended complaint. (The first amended complaint is not included in the record on appeal, but the docket in that action shows when the first amended complaint was filed.) Defendants moved to dismiss the first amended complaint. In March 2021, the federal district court granted the motion, concluding that the second federal action was barred by (1) the fact that the parties' settlement agreement in the underlying action included a waiver under Civil Code section 1542, and (2) the full faith and credit owed to the state court dismissal. The court found that the state court action and the second federal action were "fundamentally based on the same events," noting that the federal plaintiffs had conceded the point in the joint stipulation for a stay in that action. In March 2021, the federal district court entered judgment in favor of defendants.

The federal plaintiffs appealed to the Ninth Circuit. In February 2022, the Ninth Circuit reversed and remanded. The Ninth Circuit concluded that the second federal action was not precluded by the present action, because no final judgment was entered.

12

(*Bhakta v. Bhakta* (9th Cir. Feb. 1, 2022, No. 21-55328) 2022 U.S.App. Lexis 2860.)  In February 2022, the federal district court ordered the parties to meet and confer and thereafter to file a joint status report explaining why the court should not stay the matter pending resolution of the state court action.

The following month, the parties in the second federal action entered into a tolling agreement.[4]  The federal plaintiffs agreed to dismiss the second federal action without prejudice pursuant to rule 41(a)(1)(A)(i).  The parties also agreed "to ensure that the Federal Action is dismissed, by, including but not limited to, filing additional documents in the Federal Action, such as a joint stipulation for dismissal."

Later that month, in March 2022, the federal plaintiffs filed a notice of dismissal pursuant to rule 41(a)(1)(A)(i) and voluntarily dismissed the second federal action without prejudice.

H.  *The Parties' Cross-Motions to Enforce the Settlement*

In June 2021 (while the appeal in the second federal action was pending in the Ninth Circuit), plaintiffs moved in the superior court to enforce the "MSC transcript" under sections 128, 187, 473, 664.6, 1060, and the court's inherent powers. (Capitalization and boldface omitted.)  Plaintiffs asserted that they filed the motion in large part because of the court's instruction, in denying the motion to invalidate the settlement, that the parties "'move forward.'"  In the enforcement motion, plaintiffs

---

[4]     The copy of the tolling agreement included in the record on appeal includes only the federal plaintiffs' signatures.  But plaintiffs' counsel attested in a declaration that all of the parties signed the agreement.

indicated that they "expressly reserve[d] all rights to appeal the decision on that motion, if necessary, and" indicated that "as such neither the content of this motion nor any filings or comments made in connection with it shall be deemed a waiver of any arguments or rights, all of which are expressly reserved."

Plaintiffs described their unsuccessful efforts to reach agreement with defendants after the mandatory settlement conference. In light of those failed efforts, plaintiffs moved for an order requiring the motel to be sold by a commercial real estate broker for the highest price on the open market, and they outlined a process by which the sale could be effectuated. Plaintiffs argued: "Because it is clear from the 2018 Transcript that no party has the right to buy the hotel (no right of first refusal), and because the 2021 Appraisal is merely advisory, the remaining two options (other than appeal) are (1) the parties reach a written agreement supplying the essential terms; or (2) the court orders that the hotel be sold through a commercial broker for the highest price on the open market."

Defendants opposed the motion and cross-moved for the court to enforce the settlement. Defendants argued that the court had authority under "section 664.6 to enforce the terms of the parties' Settlement Stipulation" and had the authority under sections 128 and 187 to fashion an equitable remedy. After setting forth what they contended were the settlement terms stated on the record, defendants explained what the parties "meant" regarding the sale of the property. According to defendants, the parties intended "that the only circumstance under which the Property would be sold to a third party purchaser (or Plaintiffs) would be if the valuation of net proceeds exceeded

14

Defendants Dhar and Minesh Bhakta's and Jayashree Krishna's ability to tender Plaintiffs 49% of net proceeds, but Defendants have always believed that they would be able to pay Plaintiffs that amount from their own resources without having to sell the Property." According to defendants, "neither Defendants nor Plaintiffs ever agreed to sell the Property unless Defendants demonstrated that they were unable to pay Plaintiffs 49% of the net proceeds Plaintiffs were entitled to as demonstrated by an independent appraisal."

In their cross-motions, the parties argued about a March 2021 appraisal of the property. The appraiser's declaration and the appraisal report were attached as exhibits to defendants' motion. The market value of the property was appraised to be $5 million as of January 1, 2021, and $5.8 million as of June 30, 2018. Plaintiffs' counsel pointed out that in the appraisal report the appraiser disclosed that she had previously appraised the property in 2017, but defendants did not tell plaintiffs about the prior appraisal before the 2021 appraisal was performed.

In September 2021, the court held a hearing on the motions and denied both motions. At the hearing, the court noted that it had the power to enter judgment only on the terms of the settlement.

I.  *Defendants Move for Entry of Judgment Based on Res Judicata*

In April 2022, defendants moved under sections 128, 187, 664.6 and rule 41 for "entry of judgment based on the res judicata effect of Plaintiffs' notice of dismissal filed on March 29, 2022, in their second federal court action." Defendants argued that under the federal two dismissal rule under rule 41(a)(1)(B) the judgment entered in the second

15

federal action amounted to a judgment on the merits and accordingly should preclude the state court action under res judicata principles. The two dismissal rule provides that "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." (*Ibid.*; *Commercial Space Management Co. v. Boeing Co.* (9th Cir. 1999) 193 F.3d 1074, 1076 (*Commercial Space*).)

Plaintiffs opposed the motion, arguing that the two dismissal rule did not apply, because the federal plaintiffs' voluntary dismissal of the second federal action was not unilateral and instead resulted from the parties' agreement to dismiss that action. In support of the opposition, plaintiffs' counsel filed a declaration in which he attached as exhibits the parties' tolling agreement and an email exchange with defendants' attorney about that agreement. In that email exchange, defense counsel wrote: "I also added a provision requiring plaintiffs to dismiss the federal action, which was mentioned in the recitals but not included in the actual agreement."

The court denied the motion, concluding that dismissal of the second federal action did not amount to a judgment on the merits, because the parties agreed that the dismissal was without prejudice.

J. *The Judgment*

In February 2022, plaintiffs filed a proposed judgment. It read: "Pursuant to the reporter's transcript of proceedings from the court hearing which occurred on April 19, 2018 (eight pages in length plus the one-page reporter's certificate, attached hereto), judgment is hereby entered and the court retains jurisdiction pursuant to Section 664.6 of

16

the California Code of Civil Procedure." The court issued an order to show cause as to why it should not sign plaintiffs' proposed judgment. Defendants filed an opposition, arguing that entry of judgment was not necessary because the court had previously dismissed the action with prejudice and that amounted to a final judgment. In the alternative, defendants asked the court to enter defendants' proposed judgment, which included a list of 17 items that purported to reflect the terms of the oral settlement.

At a hearing on the order to show cause, plaintiffs objected to the terms that defendants "put in their proposed judgment" as deviating from the parties' settlement. The day after the hearing, plaintiffs filed an objection to defendants' proposed judgment on the same grounds that they raised at the hearing. The court entered defendants' proposed judgment, with some minor modifications that were discussed at the hearing.[5]

## DISCUSSION

### A. *Appeal*

Plaintiffs argue that the settlement agreement is unenforceable because (1) the agreement does not contain a sale price for the motel or an objective method of determining the sale price and (2) the loan amount to be repaid to defendants Mukundbhai and Sudhaben (and possibly others) is subject to verification. Plaintiffs

---

[5] We agree with plaintiffs that the judgment did not accurately reflect the terms of the oral settlement. The judgment improperly varies in key respects from the settlement and includes terms that were not part of the settlement. (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 790 (*Machado*); *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810 (*Weddington*).) Because we vacate the judgment in its entirety, however, we need not address the specific issues that plaintiffs raise in that regard.

argue that the term concerning the sale price lacks certainty and that both terms are unenforceable because they are agreements to agree. We agree. Because we conclude that the settlement agreement is unenforceable on those grounds, we need not address plaintiffs' remaining arguments.

Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." (*Id.*, subd. (a).) Section 664.6 allows parties that have settled to "avail themselves of a quick and effective avenue for enforcement by making a motion to enter judgment on the agreement." (*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881, 898.) The parties are thus able to enforce an agreement with "nothing more than a single motion." (*Ibid.*)

When the trial court retains jurisdiction under section 664.6 to enforce a settlement, the trial court's authority "is extremely limited." (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176.) Before the court can enforce the agreement, the court is empowered to determine "in the first instance whether the parties have entered into an enforceable settlement." (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360 (*Osumi*).) The trial court is limited "'to deciding what terms the parties themselves have previously agreed upon.'" (*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732 (*Bowers*).) The "trial court cannot enforce a

18

settlement under section 664.6 unless the trial court finds the parties expressly consented . . . to the material terms of the settlement." (*Ibid.*) "In making that determination, 'the trial court acts as the trier of fact, determining whether the parties entered into a valid and binding settlement.'" (*Osumi*, *supra*, at p. 1360.) "The court is powerless to impose on the parties more restrictive or less restrictive or different terms than those contained in their settlement agreement." (*Hernandez*, *supra*, at p. 1176.) In other words, ""'nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.""" (*Machado*, *supra*, 39 Cal.App.5th at p. 790.)

We must affirm the trial court's factual findings if they are supported by substantial evidence. (*Osumi*, *supra*, 151 Cal.App.4th at p. 1360.) We independently review a trial court's ruling on a section 664.6 motion for "errors of law." (*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 35; *Weddington*, *supra*, 60 Cal.App.4th at p. 815.)

Settlement agreements are contracts subject to the ordinary rules of contract interpretation. (*General Motors Corp. v. Superior Court* (1993) 12 Cal.App.4th 435, 439; *Weddington*, *supra*, 60 Cal.App.4th at p. 810.) "Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ. Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (*Id.*, § 1639.)" (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821-822.)

19

"A settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain."  (*Lindsay v. Lewandowski* (2006) 139 Cal.App.4th 1618, 1622.)  Subdivision (e) of Civil Code section 3390 provides that an agreement is unenforceable if its terms "are not sufficiently certain to make the precise act which is to be done clearly ascertainable."  """"The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."""" (*Bowers*, *supra*, 206 Cal.App.4th at p. 734.)  "'If, by contrast, a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract.'" (*Ibid.*)

A term requiring "'that some matter shall be settled by future agreement'" is in general "'too indefinite for enforcement.'"  (*Weddington*, *supra*, 60 Cal.App.4th at p. 812.)  "'[I]f an essential element is reserved for the future agreement of both parties, as a general rule the promise can give rise to no legal obligation until such future agreement. Since either party in such a case may, by the very terms of the promise, refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.'" (*Ibid.*; *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 213-214 (*Bustamante*).)  In other words, "'there is no contract where the objective manifestations of intent demonstrate that the parties chose not to bind themselves until a subsequent agreement [was] made.'" (*Bustamante*, *supra*, at p. 213.)  Nevertheless, when an agreement provides an objective method for ascertaining the term left for future

20

determination, "the contract should not be construed as too indefinite to be enforced." (*Larwin-Southern California, Inc. v. JGB Investment Co.* (1979) 101 Cal.App.3d 626, 643.)

"Whether a contract is certain enough to be enforced is a question of law for the court." (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 348, fn. 1.)

Plaintiffs argue that the provision concerning the motel's sale price lacks certainty and amounts to nothing more than an agreement to agree on a price at a later date. We agree. The sale price is a critical material term of the agreement because all of the parties' other obligations and rights in the agreement flow from that price. For example, defendants' determination of whether they will "buyout" plaintiffs' interest in the motel (as opposed to selling the motel to a third party) is to be determined on the basis of the sale price. But the settlement agreement does not contain a set price for the sale of the motel or any usable process by which the price can later be set.

The agreement provides that the parties will list the motel for sale "based on the appraised value at a price determined by mutual agreement of the parties." The parties agreed to have the property appraised by an independent appraiser, but they did not agree to list the property for sale for the appraised value, either initially or as a default if the parties could not agree. The price is instead to be based in some unspecified way "on the appraised value" as "determined by" the parties. The agreement contains no clarity about precisely how the appraised value is to factor into the parties' later agreement, such as by setting the price at the appraised value as a default after some specified period if the parties could not otherwise agree upon a price. Because the agreement does not contain

21

any objective method by which the parties are required to set the sale price, the parties at best had an unenforceable "'agreement to agree.'" (*Bustamante*, *supra*, 141 Cal.App.4th at p. 213.) The parties' agreement to agree on a price at a later date without any method for setting that price is not enforceable. (*Ibid.*)

Plaintiffs also argue that the term concerning the repayment of loans made by defendants Mukundbhai and Sudhaben is similarly unenforceable. We agree.

The parties agreed that if and when the motel is sold to a third party, the proceeds would first be used to pay off outstanding loans from U.S. Bank and Balboa Finance and then would be used to pay "the loan" (as otherwise described in the agreement) from defendants Mukundbhai and Sudhaben. The parties otherwise agreed that "the loan" made by defendants Mukundbhai and Sudhaben had a principal balance of $1,990,435. Those terms adequately specify the amount to be repaid to defendants and the priority of that repayment, and they are reasonably certain and definite. But the parties also agreed that the amount of the principal balance of $1,990,435 "is subject to verification of the infusions or loans advanced by Mukundbhai and Sudhaben Bhakta and any other defendants in the case." The amount of the loan made by defendants Mukundbhai and Sudhaben was therefore subject to some kind of future verification by plaintiffs. No provision explains when or how that verification is to occur or what happens if the amount is not verified. Moreover, the provision also introduces a new variable—loans made by "any other defendants in the case"—but provides no clarity about whether those loans are part of "the loan" amount to be repaid to defendants Mukundbhai and Sudhaben or were subject to consideration in the verification process. The trial court itself

22

acknowledged that the agreement contained "some ambiguity about what is going to be validated or not validated in terms of the money owed to the defendants who made the loan." Given the lack of certainty concerning the amount of the loan to be repaid to defendants Mukundbhai and Sudhaben (or any other defendants) and the verification process for that repayment, the provision is unenforceable and renders the agreement invalid. (*Bowers*, *supra*, 206 Cal.App.4th at p. 734; Civ. Code, § 3390, subd. (e).)

Defendants argue that to the extent that the agreement is "lacking in any way" it is nevertheless enforceable because the parties "agreed upon [a] binding resolution mechanism involving the trial court cur[ing] any purported defects." In particular, defendants point out that the trial court stated that if the parties were "not able to reach an agreement" about the sale price or the loans to be repaid to defendants, then "all of that [would] be determined by the Court." The court further explained: "The Court will exercise its jurisdiction on any issue to which they cannot make an agreement on. The Court will listen to both sides and make the order and make the determination." We are not persuaded that the purported dispute resolution mechanism cures the defects in the settlement.

The purported dispute resolution mechanism is itself too indefinite to be usable. First, the settlement agreement does not specify how the parties are to invoke the mechanism, and it does not set conditions that would trigger the mechanism on their own. For example, the settlement does not state that if the parties do not agree on the sale price *by a certain date*, then either party may move the court to determine the price. As a result, no one—plaintiffs, defendants, or the court—knows when the agreement calls for

the court to step in and settle a dispute, and when the agreement instead calls for the court to have the parties continue to try to reach agreement on their own. Second, the settlement agreement does not specify how the dispute resolution mechanism is supposed to work, other than the vague statement that the court "will listen to both sides and make the order and make the determination." Will there be a trial? Can the parties call witnesses to testify? Can they introduce documentary evidence? Can they engage in discovery beforehand? Again, no one knows what procedures are prohibited or allowed or required by the agreement. As a result, the purported dispute resolution mechanism is incapable of curing the deficiencies in the settlement.

For all of these reasons, we conclude that the trial court erred by not granting plaintiffs' motion to invalidate the settlement agreement because the terms concerning the sale price of the motel and repayment of loans to defendants are too uncertain to enforce. We accordingly vacate the judgment entered on the basis of the invalid agreement.

B. *Cross-Appeal*

Defendants cross-appeal, arguing that they are entitled to judgment in their favor and that we should so modify the judgment and affirm it as modified. Defendants contend that the trial court erred by denying (1) the presettlement motion for judgment on the pleadings based on the res judicata effect of plaintiffs' dismissal with prejudice of the involuntary dissolution claim and (2) the postsettlement motion for judgment based on the res judicata effect of the federal two dismissal rule. Defendants' arguments are meritless.

24

1. *Judgment on the Pleadings*

Defendants first argue that the trial court should have granted the presettlement motion for judgment on the pleadings because plaintiffs' dismissal with prejudice of the involuntary dissolution cause of action operated to preclude the remaining claims under the doctrine of res judicata. The argument is legally baseless.

"'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action.'" (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; § 438, subds. (b)(1), (c)(1)(B)(ii).) We independently review a trial court's ruling on a motion for judgment on the pleadings. (*Harris*, *supra*, at p. 777.)

"The preclusive effects of a prior judgment or similar adjudication—traditionally known as res judicata—are of two distinct kinds:" (1) the narrow form of res judicata known as claim preclusion and (2) collateral estoppel, also known as issue preclusion. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 530; *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 828.) "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.'" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*).) Defendants' motion for judgment on the pleadings involves the claim preclusion aspect of res judicata.

Claim preclusion "acts to bar claims that were, or should have been, advanced in a previous suit involving the same parties." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824 (*DKN Holdings*).) "Claim preclusion 'prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.'" (*Ibid.*, italics omitted.) "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*Ibid.*) "To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) Whether claim preclusion applies is a question of law that we independently review. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10.)

Defendants argue that the court erred by not granting the motion for judgment on the pleadings on plaintiffs' fraud and breach of fiduciary duty causes of action because those claims involve the same "primary rights" as the involuntary dissolution cause of action that plaintiffs voluntarily dismissed with prejudice. We disagree, regardless of whether the causes of action involve the same primary right. Claim preclusion does not apply because the dismissal of the involuntary dissolution cause of action was not a "final judgment on the merits" in plaintiffs' lawsuit. (*DKN Holdings*, *supra*, 61 Cal.4th at p. 824.) A final judgment disposes of all issues between the parties. (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 575; *ECC Construction, Inc. v. Oak Park Calabasas Homeowners Assn.* (2004) 122 Cal.App.4th 994, 1002.) The dismissal of the dissolution claim did not do that—it disposed of only one claim. Moreover, the dismissal

26

of the dissolution claim was not even a court *order*, let alone a final *judgment*; it was merely a pretrial voluntary dismissal of a single claim. Claim preclusion does not operate on the voluntary dismissal of a single claim to bar other claims in the same action. Rather, claim preclusion "'gives conclusive effect to a former judgment only when the former judgment was in a different action; an earlier ruling in the same action cannot be res judicata . . . .'" (*Phillips v. Sprint PCS* (2012) 209 Cal.App.4th 758, 770; see also *DKN Holdings*, *supra*, 61 Cal 4th at p. 828 ["claim preclusion bars the second action"]; *Clark v. Lesher* (1956) 46 Cal.2d 874, 880 [claim preclusion "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action"]; *Mycogen*, *supra*, 28 Cal.4th at p. 897 ["all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date"].) Because plaintiffs' voluntary dismissal of the dissolution claim occurred in the present action and left other claims unresolved, it was not a final judgment (or even a court order) and could not have any preclusive effect on the remaining causes of action in the same lawsuit.

Campbell v. Security Pacific National Bank* (1976) 62 Cal.App.3d 379 is the only authority defendants cite for the proposition that dismissal of some claims can have preclusive effect on other claims in the same suit. *Campbell* is inapposite because it concerned issue preclusion, not claim preclusion. (*Id.* at pp. 385-386; but see *Lennane v. Franchise Tax Bd.* (1996) 51 Cal.App.4th 1180, 1185-1186 [issue preclusion does not apply in the same action].)

For these reasons, we conclude that the trial court did not err by denying defendants' motion for judgment on the pleadings.

2. *The Federal Two Dismissal Rule*

Defendants argue that the trial court erred by denying the motion for entry of judgment based on the purported res judicata effect of the federal plaintiffs' voluntary dismissal of both federal actions. The argument is forfeited and meritless.

We presume that a trial court order is correct, and the burden is on an appellant or cross-appellant "to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Amato v. Mercury Casualty Co.* (1993) 18 Cal.App.4th 1784, 1794.) The record on appeal does not include the first amended complaint filed in the second federal action. We thus are unable to examine the claims asserted in that action to determine whether they involve the same causes of action as the claims asserted in this action. The record therefore is inadequate for us to determine whether the doctrine of res judicata applies. Defendants have consequently failed to carry their burden as cross-appellants of affirmatively demonstrating that the trial court erred by denying the motion for judgment based on the res judicata effect of the federal two dismissal rule. (*Herrera v. Doctors Medical Center of Modesto Inc*. (2021) 67 Cal.App.5th 538, 546-547.)

In any event, the argument has no merit because the federal plaintiffs' voluntary dismissal of the second federal action did not trigger the federal two dismissal rule and accordingly did not constitute a judgment on the merits. In analyzing whether the

voluntary dismissal of the second federal action triggered the two dismissal rule and thus has preclusive effect, we look to federal law.  (*Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1452.)

Rule 41(a)(1)(A)(i) provides that a plaintiff in federal court may voluntarily dismiss an action by notice of dismissal "before the opposing party serves either an answer or a motion for summary judgment."  Rule 41(a)(1)(B) provides:  "Unless the notice or stipulation states otherwise, the dismissal is without prejudice.  But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."  The second dismissal operates as an adjudication on the merits regardless of whether the notice states that the dismissal is without prejudice.  (*Commercial Space*, *supra*, 193 F.3d at p. 1076.) "This is known as the 'two dismissal rule.'"  (*Ibid.*, italics omitted.)

The two dismissal rule is an exception to the equitable principle in federal law, reflected in rule 41(a)(1), "that a voluntary dismissal of an action does not bar a new suit based upon the same claim."  (*Poloron Products, Inc. v. Lybrand Ross Bros. & Montgomery* (2d Cir. 1976) 534 F.2d 1012, 1017 (*Poloron*).)  The "purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading" (*ibid.*) and "'to prevent unreasonable abuse and harassment,' [Citation] 'by [the] plaintiff securing numerous dismissals without prejudice.'"  (*Sutton Place Development Co. v. Abacus Mortg. Inv. Co.* (7th Cir. 1987) 826 F.2d 637, 640.)  When "the purpose behind the 'two dismissal' exception would not appear to be served by its literal application, and where

29

that application's effect would be to close the courthouse doors to an otherwise proper litigant, a court should be most careful not to construe or apply the exception too broadly." (*Poloron*, *supra*, at p. 1017; *Sutton Place*, *supra*, at p. 640 ["there are circumstances when due regard for the underlying policy concerns of the Rule may require that the court depart from the precise language of the Rule"].)  In particular, "a dismissal by stipulation knowingly consented to by all parties does not activate the 'two dismissal' bar against bringing an action based on or including the same claim." (*Poloron*, at p. 1018.)  We independently review whether res judicata applies. (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1218.)

The federal plaintiffs' dismissal of the second federal action was not unilateral. (*Lake at Las Vegas Investors Group v. Pacific Malibu Dev. Corp.* (9th Cir. 1991) 933 F.2d 724, 727.)  Rather, the federal plaintiffs voluntarily dismissed that action pursuant to the parties' negotiated tolling agreement.  The term requiring the federal plaintiffs to dismiss the action was actually added by defense counsel, and defendants even agreed that they would file a joint stipulation for dismissal, if necessary.  The dismissal of the second federal action thus falls squarely within the rule that "a dismissal by stipulation knowingly consented to by all parties does not activate the 'two dismissal' bar against bringing an action based on or including the same claim." (*Poloron*, *supra*, 534 F.2d at p. 1017.)  The trial court consequently did not err by denying defendants' motion.

DISPOSITION

We vacate the judgment and reverse and remand for further proceedings consistent with this opinion.  Plaintiffs shall recover their costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ _____
J.

We concur:

FIELDS _____
      Acting P. J.

RAPHAEL _____
      J.